UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMONE JORDAN,

        Plaintiff,

                                    CASE NO. 06-CV-10979-DT
                                    JUDGE PAUL D. BORMAN

    v.                                      MAGISTRATE JUDGE PAUL J. KOMIVES

PATRICIA CARUSO,
PAUL H. RENICO,
TODD PENTRICH,
BEVERLY MURDOCK and
NEMUS GONZALES,

        Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' RULE 12(b) MOTION TO DISMISS OR ALTERNATIVE RULE 56(b)
MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 13)**

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    Defendants' first dispositive motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    Defendants second dispositive motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.    This report treats defendants' motion solely as a motion to dismiss pursuant to Fed. R. Civ. P. 12
          ("Defenses and Objections"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     E.    Furthermore, this report addresses only those issues specifically argued in defendants' motion. . 7
     F.    Plaintiff's claims concern the display of his name on his door card. . . . . . . . . . . . . . . . . . . . 9
     G.    Defendants' Second Dispositive Motion Should Be Granted in Part and Denied in Part. . . . . . . 14
          1.     The Eleventh Amendment permits an action for damages against defendants in their
               personal capacities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
               15
          2.     Plaintiff's claims against Gonzales, Renico and Caruso do not state § 1983 claims. . . 18
          3.     Plaintiff's has not stated a RLUIPA claim against Pentrich or Murdock. . . . . . . . . . . 23
          4.     Plaintiff has not stated an Eighth Amendment claim. . . . . . . . . . . . . . . . . . . . . . . . . . 28
          5.     The Court need not determine whether plaintiff's claims under RLUIPA were clearly
               established or whether Pentrich and Murdock's conduct was objectively reasonable. . 33
          6.     Defendants' request for costs and fees is premature. . . . . . . . . . . . . . . . . . . . . . . . . . 35

III.    NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**I.     RECOMMENDATION:**  The Court should grant in part and deny in part defendants'

Rule 12(b) motion to dismiss or alternative Rule 56(b) motion for summary judgment.  Doc. Ent.

13.  Specifically, the Court should grant the motion to the extent it (1) seeks dismissal of the

claims against defendants Gonzales, Renico and Caruso; (2) seeks dismissal of plaintiff's Eighth

Amendment claim; and (3) seeks dismissal of plaintiff's RLUIPA claims.  Furthermore, the

Court should not dismiss plaintiff's complaint *in toto*, as defendants' motion did not address

each of plaintiff's claims.

**II.     REPORT:**

**A.     Procedural History**

**1.     Plaintiff's previous prisoner civil rights cases**

It appears that plaintiff has been a party to four other prisoner civil rights cases in this

Court: (1) Case No. 94-CV-60098-GL, *Jordan v. Walls, et al.*; (2) Case No. 03-CV-72672-RHC-

WC, *Jordan-El v. Jenniches, et al.*; (3) Case No. 05-74362-DPH-DAS, *Jordan v. Dennis*;[1] and

(4) Case No. 06-CV-10431-PDB-DAS, *Jordan v. Harrington, et al*.

Furthermore, plaintiff has been a party to seven prisoner civil rights cases the Western

District of Michigan: (1) Case No. 01-CV-00837-WAM-ESC, *Jordan-El v. Singleton, et al.*; (2)

Case No. 02-CV-00074-GJQ-HWB, *Jordan-El v. Martin, et al.*;[2] (3) Case No. 02-CV-00106-

DWM-HWB, *Jordan-El v. Bolden, et al.*; (4) Case No. 04-CV-00554-RAE-ESC, *Jordan-El v.

Caruso, et al.*; (5) Case No. 04-CV-00580-RHB-JGS, *Jordan-El v. Rose, et al.*; (6) Case No. 04-

CV-00665-RAE-ESC, *Jordan-El v. Sturdivant, et al.* and (7) Case No. 05-CV-00424-GJQ-TPG,

---

[1]Formerly Western District of Michigan Case No. 05-CV-00720-
GJQ-TPG, *Jordan-El v. Dennis, et al.*

[2]Formerly Eastern District of Michigan Case No. 02-CV-71400-
PDB, *Jordan v. Martin, et al.*

*Jordan-El v. McLellan, et al.* Additionally, on May 21, 2007, plaintiff filed *Jordan-El v. Caruso, et al.*, Case No. 07-CV-00095-RHB-TPG.[3]

## 2. The instant prisoner civil rights complaint

On March 6, 2006, while incarcerated at Chippewa Correctional Facility (URF), plaintiff filed a fee-paid, pro se civil rights complaint. Doc. Ent. 1. Defendants are Michigan Department of Corrections (MDOC) Director Patricia Caruso, former St. Louis Correctional Facility (SLF) Warden Paul H. Renico, SLF Sgt. Nemus Gonzales, and SLF RUMs Todd Pentrich and Beverly Murdock. Doc. Ent. 1 ¶¶ 2-6, Doc. Ent. 5 at 8.

The facts underlying the complaint stem from plaintiff's March 4, 2003, Step I grievance regarding plaintiff's door card. Doc. Ent. 1 ¶¶ 18-30. Plaintiff generally claims this case is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, as well as 42 U.S.C. § 2000cc-1. Doc. Ent. 1 at 4 ¶ 8. Plaintiff seeks declaratory, injunctive and monetary relief. Doc. Ent. 1 ¶¶ 36-38. The complaint is signed under penalty of perjury. Doc. Ent. 1 at 19.

Plaintiff is currently incarcerated at Oaks Correctional Facility (ECF) in Manistee, Michigan. Doc. Ent. 18.[4]

## B. Defendants' first dispositive motion

On June 2, 2006, defendants Caruso, Renico, Pentrich, Murdock and Gonzales filed a motion for dismissal for lack of exhaustion. Doc. Ent. 5. They argued that "[t]he plaintiff ha[d] not demonstrated that he exhausted all available administrative remedies since he failed to

---

[3] Plaintiff also claims he has filed some state court cases. Doc. Ent. 1 at 6-7 ¶¶ 11(e), (f), (g) & (l).

[4] On July 13, 2006, Judge Borman referred this case to me to conduct all pretrial proceedings. Doc. Ent. 6.

demonstrate that he filed or was prevented from filing grievances against each defendant setting forth the allegations of mistreatment of wrongdoing forming the basis of the constitutional claims asserted against each of the defendants." Doc. Ent. 5 at 11.

On January 26, 2007, I entered a report recommending that the Court deny without prejudice defendants' motion to dismiss. Doc. Ent. 10.[5] On March 7, 2007, Judge Borman entered an order accepting my report and recommendation and denied without prejudice defendants' motion to dismiss. Doc. Ent. 12.

## C. Defendants second dispositive motion

On June 25, 2007, defendants Gonzales, Caruso, Renico, Pentrich and Murdock filed a Rule 12(b) motion to dismiss or alternative Rule 56(b) motion for summary judgment. Doc. Ent.

---

[5]Plaintiff claims he did not receive notice of this report and recommendation until he received the Court's March 7, 2007, order on March 12, 2007. Doc. Ent. 15 at 29 ¶¶ 13, 14. Plaintiff claims he discovered his file in this case was missing. Doc. Ent. 15 at 30 ¶¶ 19, 22 (this report interprets plaintiff's claims of difficulty accessing his file as justification for permitting him an extension of time within which to object to my report and recommendation and not as an independent claim).

He prepared a letter to the Court, dated March 14, 2007, in which he sought copies of certain documents in this case; however, he was not permitted to send it via expedited legal mail in violation of MDOC PD 05.03.118 ("Prisoner Mail"). Doc. Ent. 15 at 30-31 ¶¶ 23, 24. Plaintiff claims he did not have an opportunity to read my report and recommendation until he received the copies he had requested from the Court - on or about March 26, 2007. Doc. Ent. 15 at 31 ¶ 25.

On or about April 12, 2007, he completed a prisoner kite. Doc. Ent. 15 at 39. In a memorandum dated April 16, 2007, he was informed that there was "no record of legal mail coming in for [him] during either January or February." Doc. Ent. 15 at 40.

In any event, plaintiff registers objections to the report and recommendation. Doc. Ent. 15 at 31-32 ¶¶ 26, 27. Perhaps this is what plaintiff is referring to as his "motion for relief from judgment". *See* Doc. Ent. 15 at 26, 32, 34.

13. They argue that (I) "[t]he complaint fails to state a federal claim[,]" and (II) "[t]he claims are barred by immunity." Doc. Ent. 13 at 7-10.

On July 11, 2007, I entered an order setting the response deadline for defendants' dispositive motion for August 13, 2007. Doc. Ent. 14. On August 16, 2007, plaintiff filed a response. Doc. Ent. 15.[6] This report treats plaintiff's response as timely. It is dated August 12, 2007, Doc. Ent. 15 at 24, this report assumes that plaintiff's motion was delivered immediately to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner's "notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.").

**D.    This report treats defendants' motion solely as a motion to dismiss pursuant to Fed. R. Civ. P. 12 ("Defenses and Objections").**

Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections. As to how defenses should be presented, the rule states in pertinent part:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]

Federal Rules of Civil Procedure 12(b)(6). "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters

---

[6]Attached to plaintiff's response are (1) a February 22, 2006, kite response memorandum from URF Chaplain Rev. Sandy Robert Shaw (Doc. Ent. 15 at 35); (2) a copy of MDOC PD 03.01.110 ("Prisoner/Parolee Name Changes"), effective 08/31/98 (Doc .Ent. 15 at 36-37); (3) a February 27, 1997, memorandum regarding plaintiff's name change (Doc. Ent. 15 at 38); (4) an April 12, 2007, prisoner kite (Doc. Ent. 15 at 39); (5) an April 16, 2007, grievance response (Doc. Ent. 15 at 40); (6) a copy of MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective 01/01/01 (Doc. Ent. 15 at 41-47).

outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true[.]" *Bell Atlantic Corp.*, 127 S. Ct. at 1965 (citations and quotations omitted). It is not enough that "the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 1968. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1970. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974. Claims should be "nudged . . . across the line from conceivable to plausible" to avoid dismissal. *Id.*

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The

Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. 41, 48 (1957).  A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d ed. 1995).

Although defendants' June 25, 2007, dispositive motion is alternatively labeled as a motion for summary judgment, defendants have not attached any evidence to their complaint, for example affidavits or prison records.  Therefore, the instant motion is treated solely as a Fed. R. Civ. P. 12 motion to dismiss.

**E.     Furthermore, this report addresses only those issues specifically argued in defendants' motion.**

Title 42 of the United States Code governs the public health and welfare.  Section 1997e governs 42 U.S.C. § 1983 suits by prisoners.  With regard to the dismissal of prisoner lawsuits, 42 U.S.C. § 1997e(c) provides:

> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

> (2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c)(1)-(2).

Plaintiff's complaint lists his claims for relief as based on the First, Eighth and Fourteenth Amendments, as well as 42 U.S.C. § 2000cc-1 ("Protection of religious exercise of

institutionalized persons");[7] Mich. Comp. Laws § 750.147b ("Ethnic intimidation; violation, penalty; civil action, damages, costs") and Mich. Comp. Laws § 691.1407 ("Governmental immunity from tort liability"). Doc. Ent. 1 ¶¶ 31-35.[8] Defendants' motion acknowledges this. Doc. Ent. 31 at 7.

Furthermore, in his response to defendants' second dispositive motion, plaintiff characterizes these claims for relief as follows: (1) freedom of speech; (2) freedom of religious practice; (3) retaliation for seeking redress of grievance concerning ethnic and religious name change; (4) 42 U.S.C. § 2000cc-1; (5) right to be free from cruel and unusual punishment; (6) right to be free from egregious abuse of governmental power; (7) right to equal protection of the laws; and (8)-(9) violations of 42 U.S.C. §§ 1985, 1986.[9] Doc. Ent. 15 at 4. Defendants, although not required to do so, did not refute these characterizations with a reply.

Therefore, even thought the Court may, on its own motion to dismiss, assess any of plaintiff's claims for failure to state a claim upon which relief may be granted, 42 U.S.C. 1997e(c)(1), this report addresses only those issues specifically argued by the June 25, 2007, motion.

_____

[7]Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc - 2000cc-5.

[8]Effectively, plaintiff is requesting that the Court exercise supplemental jurisdiction over his state law claim pursuant to 28 U.S.C. § 1367 ("Supplemental jurisdiction"). Doc. Ent. 1 at 4 ¶ 10.

[9]This report takes into account that "the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, it recognizes that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

**F. Plaintiff's claims concern the display of his name on his door card.**

Plaintiff became a member of the Moorish Science Temple of America, Inc. (MSTA) in 1991. Doc. Ent. 15 at 26 ¶ 3. MSTA is a recognized religious group authorized to conduct group religious services/activities. MDOC PD 05.03.150A (effective 09/20/07). According to plaintiff, "all who join the [MSTA] are required to and must use the tribal name 'El' or 'Bey' [in] conjunction with the slave name . . . and refrain from using only the slave name without 'El' or 'Bey'[.]" Doc. Ent. 15 at 27 ¶ 5. Plaintiff contends that "'El' is a tribal name which re-connects honoring [his] ancestry divine creed", "signif[ies] discontinuance of clinging to names and principles that delude[] to slavery[,]" and recognizes him as a Moor. Doc. Ent. 15 at 27-28 ¶ 8. Plaintiff contends that to accept simply "Jordan" is "to accept a state of mind of mental and physical slavery disconnecting [him] from the GREAT SPIRIT . . . and from [his] ancestry[,]" and "to accept clinging to names and principles that delude[] to slavery[.]" Doc. Ent. 15 at 28 ¶ 10. Being referred to as "merely 'Jordan' is denigrating, dehumanizing, and degrading and thus derogatory[.]" Doc. Ent. 15 at 28 ¶ 11.

On March 26, 1992, plaintiff completed an affidavit informing the MDOC and its agents to refer to plaintiff as Simone Tyrone Jordan-El, in accordance with MDOC PD 03.01.110 ("Prisoner/Parolee Name Changes"").[10] Doc. Ent. 15 at 27 ¶ 6, 38. A February 27, 1997, MDOC Memorandum from the Marquette Branch Prison (MBP) Records Office Supervisor acknowledged a computer error that had occurred regarding plaintiff's name change and stated

---

[10] "Name changes approved by the Department prior to April 1, 1996 based on a notarized affidavit shall continue to be recognized and documented in the same manner as a court ordered name change until the prisoner or parolee has discharged from the Department's jurisdiction." MDOC PD 03.10.110 ¶ A, effective 08/31/1998.

that plaintiff "should be referred to by his legal name of: SIMONE TYRONE JORDAN-EL."

Doc. Ent. 15 at 38.

On March 4, 2003, plaintiff completed a Step I grievance form because "the SLF Unit 5

Housing Team refus[ed] to provide [him] a door card that reflect[ed] [his] name change[.]" Doc.

Ent. 1 at 9 ¶ 18. The grievance states:

> This grievance is on Unit 5 Housing Team 7 to 3 shift and 3 to 11 shift for
> refusing to provide a proper door card in compliance with PD 03.01.110.
>
> On 3/4/2003 when Unit 5 Housing Staff came to put my door card on my door I
> requested that it reflect my name. When the green tag sought to comply Unit 5
> Black tags informed him that 'we don't recognize that.' This has been a continual
> practice since I been at this Facility.
>
> I request that my name reflect in compliance with PD 03.01.110.
>
> Housing Unit Team means from the RUM on down to the green and red tag state
> employees.

Doc. Ent. 1 at 21 (SLF-03-03-00715-17a).

On March 11, 2003, RUM Taylor interviewed plaintiff regarding the grievance, during

which plaintiff relied upon MDOC PD 03.01.110. Doc. Ent. 1 at 9 ¶¶ 19, 20. The grievance was

resolved that day by Taylor "agreeing to issue a directive[.]" Doc. Ent. 1 at 9 ¶¶ 12, 21. On

March 12, 2003, Taylor responded to the grievance, stating in part: "Unit staff were directed to

prepare a new door card which reflects both the commitment name and legal name of prisoner

Jordan-El and place it on his assigned cell door. Prisoner Jordan-El has now indicated that he

considers this matter satisfactorily resolved." On March 13, 2003, Steve Rivard reviewed the

grievance. Doc. Ent. 1 at 22. The SLF Unit 5 Housing Team "prepared a new door card with

both the Plaintiff's commitment name and ethnic religious name and placed [it] on [his] assigned

cell-door[.]" Doc. Ent. 1 ¶ 22.

On March 31, 2003, Taylor transferred to another MDOC facility. Plaintiff claims that on April 1, 2003, SLF's Unit 5 Housing Team reopened plaintiff's grievance, as Pentrich removed the door card which Taylor "had directed be prepared and placed on the Plaintiff's assigned cell-door[.]" Doc. Ent. 1 ¶¶ 13, 23.[11] Pentrich replaced it with a cell-door card which reflected only plaintiff's commitment name. Doc. Ent. 15 at 2. Pentrich allegedly antagonized, taunted, annoyed, intimidated and baited plaintiff with several comments. Doc. Ent. 1 ¶ 24.

That day, plaintiff sought redress from Pentrich's supervisor, Gonzales. Doc. Ent. 1 at 11 ¶ 25, Doc. Ent. 15 at 20. According to plaintiff, Murdock "notified Defendant Pentrich of the Plaintiff's seeking to complain and notified Defendant Gonzales of the subject-matter of the Plaintiff's verbal complaint, and Defendant Gonzales failed to supervise as was done by RUM Taylor[.]" Doc. Ent. 15 at 2. Gonzales told plaintiff, "Move on; I don't want to talk about it." Doc. Ent. 1 ¶ 25.

Once Pentrich and Murdock, 1st shift officers, left work, plaintiff "removed the cell-door identification card reflecting only the commitment name which Defendant Pentrich had put on [his] cell-door, and [he] requested the SLF [2nd] shift staff to do another cell-door identification card for placement on [his] cell door[.]" Doc. Ent. 15 at 33 ¶ 32. "[T]he SLF 2nd shift provided another cell-door identification card reflecting both the commitment name and [his] legal name[.]" Doc. Ent. 15 at 33 ¶ 33.

---

[11]In his request for relief, plaintiff seeks the issuance of a declaratory judgment stating that Pentrich and Murdock's insubordination toward Taylor's Step I response was because Taylor is African-American and that the Step III grievance response "authorized and agreed with the insubordination towards RUM Taylor's directive because RUM Taylor is African American[.]" Doc. Ent. 1 at 17 ¶¶ 36(d), (e).

On April 2, 2003, Pentrich "closed the cell door on the Plaintiff['s] shoulder almost catching the Plaintiff's arm[.]" Doc. Ent. 1 ¶ 26. Murdock "came and wrote on the cell-door identification card defacing the surname 'El'." Doc. Ent. 15 at 33 ¶ 33; Doc. Ent. 1 at 11 ¶ 27. Plaintiff requested a Step II grievance appeal form based upon Pentrich and Gonzales's conduct. Doc. Ent. 15 at 2. The request was received on April 2, 2003. The SLF Grievance Coordinator stated that the request was late and directed plaintiff to submit the re-opened grievance to Step III. Doc. Ent. 1 ¶ 14 & Doc. Ent. 1 at 24.

On April 4, 2003 and April 8, 2003,[12] plaintiff submitted two Step III appeals - one as an appeal of his Step II response and the other as a direct appeal on the bases of racial and/or ethnic discrimination.[13] Doc. Ent. 1 ¶ 15 & Doc. Ent. 1 at 26-28. Plaintiff's April 4, 2003 Step III grievance appeal states:

> After resolving this grievance via RUM Taylor, upon RUM Taylor transferring to another Department Facility, the Unit 5 Housing Team began removing all prisoners' door cards with Cultural/Religious/Islamic Names in which my door card was taken off by staff also contrary to the Grievance Resolution Order via RUM Taylor.

---

[12]Plaintiff lists certified mail numbers for the April 4, 2003 and April 8, 2003 mailings. Compl. ¶ 15.

[13]Plaintiff notes that MDOC PD 03.02.130 provides that "[a] grievant may file a grievance alleging racial or ethnic discrimination [and/or] staff brutality or corruption directly to Step III." MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective 12/19/2003, ¶ S; effective 04/28/03 ¶ R; effective 11/01/00 ¶ II. The policy also provides that "[u]pon receipt, the grievance shall be carefully reviewed to determine whether to respond directly to the grievance, request an investigation into the issue raised in the grievance, or return it to the grievant for filing at Step I." *Id.*

Doc. Ent. 1 at 26. Plaintiff's Step III grievance was denied on May 28, 2003. In part, the Step

III response states that the Step II/Step III form "was properly forwarded to Prisoner Affairs",

pursuant to operating procedure. Doc. Ent. 1 ¶ 16 & Doc. Ent. 1 at 30.

On or about September 17, 2004, plaintiff wrote to the Carson City Correctional Facility

(DRF) grievance coordinator. Plaintiff stated that he was on modified access and requested

grievances for three issues, one of which stated in part: "In March 2003 after resolving a

grievance concerning my door, SLF officers Pen[t]rich & Murdock conspired to remove my door

card, put it back on with 'EL' on my name, then written on, taunted, and hit with a cell door. . . .

These repeated acts are a continuing course of conduct violating authorized expression

sanctioned and e[n]couraged by [MDOC] Director's Office, Deputy Director of Administrative

Programs." Doc. Ent. 1 at 32. Plaintiff claims he was seeking to grieve Caruso's conduct

authorizing and encouraging Pentrich and Murdock's conduct. His request was denied. Doc.

Ent. 1 ¶ 17 & Doc. Ent. 1 at 32.

## G. Defendants' Second Dispositive Motion Should Be Granted in Part and Denied in Part.

For the most part, defendants simply argue that plaintiff's complaint does not state a

federal claim. Doc. Ent. 13 at 7. The Court should interpret defendants' motion as seeking

dismissal of the Eighth Amendment claims on the bases that verbal harassment and *de minimis*

use of force do not state a claim (Doc. Ent. 13 at 8-9); the RLUIPA claims on the basis that

plaintiff has not alleged a "substantial burden" on his right to free exercise (Doc. Ent. 13 at 8-9);

and claims against Gonzales, Renico and Caruso on the basis that they did not actively

participate (Doc. Ent. 13 at 10). The Court should also interpret defendants' motion as arguing

that some of plaintiff's claims are barred by the Eleventh Amendment (Doc. Ent. 13 at 10) and

they are entitled to qualified immunity with regard to plaintiff's RLUIPA claim on the basis that liability for monetary damages under the statute is not clearly established (Doc. Ent. 13 at 10).

Although defendants' motion seeks dismissal of the complaint with prejudice, the above interpretation of the pending motion renders a substantive conclusion that defendants' motion does not seek dismissal of plaintiff's First Amendment, Fourteenth Amendment, conspiracy or state law claims.[14]

### 1. The Eleventh Amendment permits an action for damages against defendants in their personal capacities.

**a.** Plaintiff sues defendants in their individual and official capacities. Doc. Ent. 1 at 2. As previously noted, plaintiff seeks declaratory, injunctive and monetary relief. Doc. Ent. 1 ¶¶ 36-38. Specifically, plaintiff sues defendants in their official capacities for declaratory and injunctive relief and in their personal capacities for monetary damages. Doc. Ent. 1 at 2-4 ¶¶ 2-6. Defendants argue that "[o]fficial capacity claims are barred by Eleventh Amendment immunity." Doc. Ent. 13 at 10.

**b.** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also

---

[14]This conclusion is not changed by defendants' citation to *Dekoven v. Bell*, 140 F.Supp.2d 748 (E.D. Mich. 2001) (Lawson, J.), in support of their claim that "[c]ouching claims in terms of 'religious rights' does not elevate such averments to the level of federal constitutional violations." Doc. Ent. 13 at 8. Nor it is changed by defendants' unsupported statement that "a prison inmate does not have a federally secured right to certain treatment of a 'door card'[.]" Doc. Ent. 13 at 9.

bars suits by citizens of the state being sued.  *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion).  "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also, Papasan v. Allain*, 478 U.S. 265, 276 (1986).

As the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity."  *Will*, 491 U.S. at 66 (internal citations omitted).  The Eleventh Amendment bars suits against state officials sued in their official capacity.  *Will*, 491 U.S. at 71.  *See also*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).

"[S]uit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Michigan] has consented to the filing of such a suit."  *Alabama v. Pugh*, 438 U.S. 781 (1978).  Here, the MDOC defendants are state officials, and plaintiff's claims against them in their official capacities are therefore barred by the Eleventh Amendment.  However, plaintiff may seek injunctive relief from a state official sued in his or her official capacity.  *Will*, *supra*, 491 U.S. at 71 n. 10.

c.      "There are . . . three qualified exceptions to Eleventh Amendment immunity[.]"  *Lawson v. Shelby County*, TN, 211 F.3d 331, 334 (6th Cir. 2000).  "First, a state may waive the protection

of the Amendment by consenting to the suit." *Lawson*, 211 F.3d at 334. "The second exception to the Eleventh Amendment bar is that Congress, under certain provisions of the Constitution, may abrogate the sovereign immunity of the states through statute." *Id*. "Under the third exception, a federal court may enjoin a 'state official' from violating federal law." *Id*. at 335 (citing *Ex parte Young*, 209 U.S. 123 (1908)).[15]

Defendants allege that there has not been "a showing of a continuing violation of federal law sufficient to avoid Defendants' immunities[.]" Doc. Ent. 13 at 4. Citing *Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006) ("RLUIPA's 'appropriate relief against a government' language falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages.") and *Edelman v. Jordan*, 415 U.S. 651, 685 (1974) ("we are unable to say that Illinois on entering the federal-state welfare program waived its immunity to suit for injunctions but did not waive its immunity for compensatory awards which remedy its willful defaults of obligations undertaken when it joined the cooperative venture."), defendants argue that a state's right of sovereign immunity "cannot be abrogated absent a showing of a continuing violation of federal law." Doc. Ent. 13 at 10.

However, it is not necessary for the Court to determine whether one of these exceptions applies to plaintiff's complaint. As previously noted, plaintiff sues defendants in their official capacities for declaratory and injunctive relief and in their personal capacities for monetary

---

[15]This is a limited exception to the Eleventh Amendment bar for suits against state officers in their official capacities which seek only prospective relief. To come within this exception, the relief sought by the plaintiff must (1) remedy a continuing violation of federal law; and (2) properly be characterized as prospective. *See Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996).

damages. Doc. Ent. 1 at 2-4 ¶¶ 2-6. Therefore, plaintiff's complaint does not appear to be invoking one of these exceptions.[16]

**d.** Plaintiff may sue defendants for damages in their personal capacities, because 'state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). For the foregoing reasons, the Court should only consider the claims against defendants insofar as they are sued in their personal capacities to the extent that plaintiff seeks monetary damages.

**2.    Plaintiff's claims against Gonzales, Renico and Caruso do not state § 1983 claims.**

**a.** Plaintiff claims that Gonzales "was Pen[t]rich and Murdock['s] immediate supervisor responsible for the control of Defendants' Pen[t]rich and Murdock['s] conduct complained about herein." Doc. Ent. 1 at 3 ¶ 4. Plaintiff also claims that, pursuant to Administrative Rule 791.2205, Renico "was immediately responsible and ha[d] final policy making authority for the maintenance, control, operation and overall administration of the Michigan St. Louis Correctional Facility[.]" Doc. Ent. 1 at 3 ¶ 5. Furthermore, plaintiff claims that, pursuant to Mich. Comp. Laws §§ 791.203 and 791.204, Caruso was the respondent to the Step III grievance appeal "with full power and authority to supervise and control the affairs of the M.D.O.C. and its several bureaus thereof including the incident complained of herein by way of a grievance

---

[16]As a result, this report declines to address whether plaintiff's requests for declaratory and injunctive relief, Doc. Ent. 1 at 16-18 ¶¶ 36, 37, are accurately described as such.

directly to Step III Three Level alleging racial or ethnic discrimination according to [MDOC PD] 03.02.130." Doc. Ent. 1 at 4 ¶ 6.

Defendants argue that plaintiff's "§1983 claims against Defendants Caruso, Renico and Gonzales . . . for allegedly failing to rectify the plaintiff's issue to his satisfaction are deficient as a matter of law." Doc. Ent. 13 at 10.

**b.** Liability in a § 1983 action cannot be based on a theory of *respondeat superior. See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978), citing *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).

As the Sixth Circuit has stated:

"Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*"

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also*, *Monell*, 436 U.S. at 693-95; *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

The following three elements are necessary to establish supervisor liability under § 1983:

(1)...the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2)...the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3)...there was an

"affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), citing cases including *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

**c.**     To begin, some of plaintiff's claims as to these supervisors are conclusory in nature.  For example, as the SLF Warden, Renico is "responsible for the overall operation of the institution."  MDOC PD 01.01.101 ("Department Organization and Responsibility"), effective 11/20/2006, ¶ E1a.  Citing Administrative Rule 791.2205, plaintiff lists Renico's responsibilities and authorities.  Doc. Ent. 1 at 3-4 ¶ 5.  Plaintiff claims that Renico "implicitly and tacitly encouraged, authorized, approved, and knowingly acquiesced to the atmosphere and/or environment for the type of conduct engaged in by Defendants Pentrich, Murdock, and Gonzales, by maintaining, controlling, governing, and operating the overall SLF Administration on the practice and/or custom . . . . [that] 'we do not discipline staff as a result of the grievance process[.]'"[17]  Doc. Ent. 15 at 3; Doc. Ent. 1 at 11 ¶ 29, 14 at ¶ 34.  Plaintiff also claims that Renico and Caruso "encouraged and approved Defendants Pentrich, Murdock, and Gonzales conduct[.]" Doc. Ent. 15 at 19.

These allegations are conclusory in nature, and "[i]t is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (citing *Place v. Shepherd*, 446 F.2d 1239 (6th Cir.1971)).  *See also Leon v. Federal Reserve Bank of Chicago*, 823 F.2d 928,

_____

[17]This statement was apparently made in Renico's grievance response SLF-02-09-02437-17a.  Doc. Ent. 15 at 3.

930 (6th Cir. 1987) ("the allegations must be more than mere conclusions, or they will not be sufficient to state a civil rights claim.") (citing *Place*, 446 F.2d at 1244).

Furthermore, plaintiff claims that Gonzales failed to supervise in his response to plaintiff when he complained about Pentrich's conduct. Doc. Ent. 1 at 13-14 ¶ 33. Plaintiff explains that Gonzales's reaction to plaintiff's attempt to seek redress was a failure to supervise, unlike Taylor's response to plaintiff's Step I grievance, and that it resulted in Pentrich "closing a cell-room door on the Plaintiff's shoulder almost catching the Plaintiff's arm and Defendant Murdock defacing the cell-room door card whereas it could not be made out how the Plaintiff's name is." Doc. Ent. 15 at 18-19. To the extent plaintiff's claim against Gonzales is based upon his failure to supervise[18] and/or plaintiff's dissatisfaction with Gonzales's response to plaintiff's complaint, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (on appeal from district court judgment granting motion for directed verdict, "Bellamy has made no showing that any of the supervisory officials who were defendants in this case actively

---

[18] "[I]t is well established that for municipal or supervisory liability for failure to train or supervise to attach, there first must be an underlying violation of plaintiff's constitutional rights." *London v. Hamilton*, No. CA 3:95CV347-MCK, 1996 WL 942865, *8 (W.D.N.C. Nov. 27, 1996) (citing *Monell* and *City of Canton*).

participated in or authorized any harassment of appellant. The testimony presented by Bellamy, at best, indicates that some instances of alleged harassment were brought to the attention of prison supervisory officials.")

Additionally, plaintiff contends that Caruso "agreed with and attempted to aid the conduct of [the four other defendants]" by (1) responding to plaintiff's Step III grievance appeal stating that staff action was in accordance with MDOC PD 03.01.110 ¶ D and that a demonstrated policy violation had not been noted, even though the Step I grievance response determined that SLF officials had violated MDOC PD 03.01.110 had occurred, and (2) not responding to plaintiff's direct Step III grievance alleging racial or ethnic discrimination. Doc. Ent. 1 at 11-12 ¶ 30, 30; Doc. Ent. 15 at 4, 16. Caruso did not respond to plaintiff's direct Step III grievance alleging racial or ethnic discrimination but did respond to his Step III grievance appeal in SLF-03-03-00715-17a "to give the false impression that only SLF-03-03-00715-17a was filed with Defendant Caruso in anticipation of litigation attempting to insulate [Pentrich], Murdock, [Gonzales] and . . . Renico from being held responsible which agrees, gives aid, tacitly and implicitly authorize[s], approve[s], and knowingly acquiesce[s] to the conduct of [Pentrich] and Murdock[.]" Doc. Ent. 1 ¶ 35; Doc. Ent. 15 at 4. To the extent plaintiff's claim against defendant Caruso is based upon her Step III grievance response or her failure to provide a response to the grievance filed directly to Step III, it fails to state a claim upon which relief may be granted. Where defendants' "only roles . . . involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (on appeal from denial of dispositive motion based upon qualified immunity, "Shehee's only allegations against Crosley, Hambrick, Henry and Miner involve their denial of

his administrative grievances and their failure to remedy the alleged retaliatory behavior. With respect to Luttrell, Shehee's only claim is Luttrell's alleged failure to intervene on Shehee's behalf.").

In conclusion, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee*, 199 F.3d at 300 (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998)).  Plaintiff's claims with respect to Gonzales, Renico and Caruso are essentially based upon alleged failures to act; therefore, the claims against these defendants do not survive a motion to dismiss.

**3.       Plaintiff's has not stated a RLUIPA claim against Pentrich or Murdock.**

**i.**       Plaintiff claims that, from the time of Taylor's transfer from SLF until the time of plaintiff's transfer from SLF, Pentrich and Murdock "removed, damaged, destroyed and defaced" plaintiff's door card "even though RUM Taylor had directed otherwise[.]"  Doc. Ent. 1 ¶ 28.  Plaintiff alleges that Pentrich's conduct of removing the cell door card and making remarks and Murdock's conduct of writing on the cell door card were "motivated by the Plaintiff's ethnic religious name change and Plaintiff's having sought redress concerning the Plaintiff's ethnic religious name change[.]" Doc. Ent. 1 ¶¶ 31-32.

Plaintiff's First Amendment claims against each of the five defendants are based upon freedom of expression, freedom of religious practice, freedom from retaliation.  Doc. Ent. 1 at 12-16 ¶¶ 31(a)-35(a).  Plaintiff also brings claims for violations of 42 U.S.C. § 2000cc-1 against each of the five defendants.  Doc. Ent. 1 at 12-16 ¶¶ 31(b)-35(b).

**ii.**       Defendants' dispositive motion directly attacks plaintiff's RLUIPA claim, as opposed to plaintiff's First Amendment right to free exercise claim.  Doc. Ent. 13 at 8-9.  Citing 42 U.S.C. §

2000cc-1(a)(1)-(2), defendants contend that "the RLUIPA is applicable only in cases in which an inmate demonstrates that a state actor is imposing a 'substantial burden' on religious exercise." Doc. Ent. 13 at 8.

**iii.**     With respect to his claims based upon 42 U.S.C. § 2000cc-1, freedom of expression/speech and freedom of religious practice, plaintiff claims that he "simply requested to be referred to by name and for the Plaintiff's name to be placed on [his] cell door identification card as allowed [by MDOC PD 03.01.110] to all prisoners who have executed a notarized affidavit prior to April 1, 1996 for such to be recognized, acknowledged, and referred to us such by State Officials." His request was denied. Doc. Ent. 15 at 6. He also describes Pentrich and Murdock's actions once Taylor left, including the removal of the card, its replacement, Pentrich's statements, Murdock's notification to Pentrich and Gonzales, and Gonzales's response to plaintiff's complaint, the alleged assault by Pentrich, and the defacement of his cell-door card by Murdock. Doc. Ent. 15 at 7.

In the affidavit in support of his response, plaintiff claims that "at the dates and times complained about in [his] Verified Complaint . . . [he] was requesting [his] name be recognized as an adherent that ha[d] joined, believe[d] in and practice[d] the teachings and doctrine of the [MSTA][.]" Doc. Ent. 15 at 27 ¶ 7.[19] He claims that when Pentrich hit him with the cell-door, plaintiff "was not in any manner protesting and/or resisting going into [his] cell-room[.]" Doc.

---

[19]In his declaration/affidavit accompanying plaintiff's response to the instant motion, plaintiff takes issue with how his Step II grievance was handled. Doc. Ent. 15 at 31-33 ¶¶ 27-31. This report interprets plaintiff's claim that SLF staff inhibited him from using the routine procedure of a Step II in person interview as an objection to defendants' exhaustion argument set forth in their first dispositive motion, as opposed to an independent First Amendment claim. Doc. Ent. 15 at 31-32 ¶ 27.

Ent. 15 at 33 ¶34. He was "merely going into [his] cell-room as [he] normally do[es] when returning from either a call-out or the facility dining hall[.]" Doc. Ent. 15 at 33 ¶ 35. He further claims "there was not any rapid evolving, fluid, and dangerous predicament circumstances occurring at the time [he] was hit by the cell-door control[l]ed by Defendant Pentrich[.]" Doc. Ent. 15 at 33 ¶ 36.

**iv.**     The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) is set forth in 42 U.S.C. §§ 2000cc - 2000cc-5. Section 2000cc-1, which concerns the "[p]rotection of religious exercise of institutionalized persons," provides in pertinent part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). In other words, "the RLUIPA prohibits the imposition by any government of a 'substantial burden on the religious exercise' of a prisoner, unless the government can show that such imposition is the least restrictive means of furthering a compelling governmental interest." *Figel v. Overton*, 121 Fed.Appx. 642, 646-647 (6th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)).

"The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(a). "[I]n contrast to the Free Exercise Clause, RLUIPA defines religious 'exercise' broadly to include practices that are not central to, or compelled by, one's religion." *Rogers v. Hellenbrand*, 118 Fed. Appx. 80 (7th Cir. 2004) (citing *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d

752, 761 (7th Cir. 2003)).[20]  "[T]he standards under RLUIPA are different than under the free

exercise clause of the First Amendment."  *Kay v. Bemis*, 500 F.3d 1214, 1221 (10th Cir. 2007).

**v.**     Defendants contend that the averments in plaintiff's complaint "fall far short of

demonstrating the existence of a 'substantial burden' on the plaintiff's religious exercise."  Doc.

Ent. 13 at 9.  In arriving at this conclusion, defendants rely upon *Thomas v. Review Bd. of*

*Indiana Employment Sec. Division*, 450 U.S. 707 (1981), wherein the Supreme Court stated:

> Where the state conditions receipt of an important benefit upon conduct
> proscribed by a religious faith, or where it denies such a benefit because of
> conduct mandated by religious belief, thereby putting *substantial pressure on an*
> *adherent to modify his behavior and to violate his beliefs*, a burden upon religion
> exists. While the compulsion may be indirect, the infringement upon free exercise
> is nonetheless substantial.

*Thomas*, 450 U.S. at 717-718 (emphasis added).  Furthermore, defendants rely upon the Tenth

Circuit's definition of substantial burden:  "Constraints upon religious conduct will not fall

within the ambit of the Act unless a 'substantial burden' is placed upon a prisoner's capacity to

exercise or express his or her sincerely held beliefs or faith.  To exceed the 'substantial burden'

threshold, government regulation must significantly inhibit or constrain conduct or expression

that manifests some central tenet of a prisoner's individual beliefs; must meaningfully curtail a

prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable

opportunities to engage in those activities that are fundamental to a prisoner's religion[.]" *Werner*

*v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995) (internal citation omitted).[21]

---

[20] "The protections embodied by the Free Exercise Clause were codified in RLUIPA § 2(a)(1)[.]" *Vision Church v. Village of Long Grove*, 468 F.3d 975 (7th Cir. 2006).

[21] *Werner* considered 42 U.S.C. § 2000bb-1 of the Religious Freedom Restoration Act.  This section of the Act was later held unconstitutional in *City of Boerne v. Flores*, 521 U.S. 507, 511 (1997).

**vi.**     The Court should conclude that plaintiff has not stated a claim under 42 U.S.C. § 2000cc-1 upon which relief may be granted, because he has not alleged that Pentrich's and Murdock's actions constituted a substantial burden on plaintiff's exercise of the MTSA religion.  First, plaintiff claims that his action is brought, in part, based upon 42 U.S.C. § 2000cc-1.  Doc. Ent. 1 at 4; Doc. Ent. 1 at 12-16 ¶¶ 31(b)-35(b).  However, these are really conclusory allegations, because they are unaccompanied by a statement of substantial burden.

Second, plaintiff's explanation regarding the significance of his name change does not allege a substantial burden.  For example, as discussed in Section II.F of this report, MTSA members are to refrain from using their slave name; the addition of 'El' to his name reconnects him to his ancestry divine creed, discontinues the use of his slave name and recognizes him as a MSTA member; the use of merely his slave name disconnects him from the Great Spirit, his ancestry; and the use of merely his slave name is denigrating, dehumanizing, and degrading and thus derogatory[.]"  Doc. Ent. 15 at 27-28 ¶¶ 5, 8, 10, 11.  Furthermore, plaintiff claims that "at the dates and times complained about in [his] Verified Complaint . . . [he] was requesting [his] name be recognized as an adherent that ha[d] joined, believe[d] in and practice[d] the teachings and doctrine of the [MSTA][.]" Doc. Ent. 15 at 27 ¶ 7.  However, this explanation does not allege a substantial burden on plaintiff's First Amendment rights.  Plaintiff does not allege that the omission of "El" from his name constitutes a substantial burden on his exercise of the MTSA religion.

 Third, the portion of plaintiff's response with respect to his 42 U.S.C. § 2000cc-1 claim does not discuss the resulting burden on his religious exercise.  Doc. Ent. 15 at 5-8.  As set forth above, a fair reading of this portion of plaintiff's response conveys that plaintiff is alleging a

violation of his First Amendment rights and not an independent RLUIPA claim. Doc. Ent. 15 at 5-8.[22]

**4.      Plaintiff has not stated an Eighth Amendment claim.**

**a.**      Plaintiff brings an Eighth Amendment claim of cruel and unusual punishment against each of the five defendants. Doc. Ent. 1 at 12-16 ¶¶ 31(c)-35(c). Defendants argue that none of the federal constitutional or statutory provisions upon which plaintiff relies "guarantee that an inmate will not be subjected to verbal harassment[,]" Doc. Ent. 13 at 8; "an averment of a *de minimis* use of force such as that averred by the plaintiff cannot sustain a claim under the Eighth Amendment[,]" Doc. Ent. 13 at 9; and "[e]ven assuming the truth of the plaintiff's allegations, he has averred nothing more than the state law tort of assault and battery." Doc. Ent. 13 at 9.

**b.**      The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials,

---

[22]It is also worth noting that, while Congress's enactment of the RFRA was deemed to have exceeded Congress's power, *Boerne*, 521 U.S at 511, the Sixth Circuit had previously stated that "defendant's alleged conduct in throwing away plaintiff's nationality card did not impose a substantial burden on the free exercise of plaintiff's religion and that the magistrate judge did not err by failing to analyze defendants' alleged conduct under the compelling interest standard contained in the RFRA [Religious Freedom Restoration Act]." *Miller-Bey v. Schultz*, No, 94-1583, 1996 WL 67941, *4 (6th Cir. Feb. 15, 1996).

who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a

"deliberate indifference" standard.  *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06.

Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847.

**c.** Plaintiff's allegations do not satisfy the objective component of an Eighth Amendment claim of excessive force.  First, to the extent plaintiff's Eighth Amendment claim is based upon Pentrich's alleged use of force when hitting plaintiff's shoulder with the cell door, Doc. Ent. 1 ¶ 26, plaintiff has not alleged an injury resulting from this incident.  Although plaintiff's response to the instant motion states that Pentrich's adverse action "included actual physical harm", Doc. Ent. 15 at 11, this is a conclusory statement.

Plaintiff's response does states that "[t]he fact that [he] did not sustain broken bones and permanent disfigurement is a fortuitous circumstance[.]"  Doc. Ent. 15 at 22.  In support of this statement, plaintiff relies upon *H.C. by Hewett v. Jarrard*, 786 F.2d 1080 (11th Cir. 1986). Noting that "the conditions of detainee incarceration affect liberty interests protected by the fourteenth amendment rather than the eighth," the Court concluded that the superintendent's shoving of detainee crossed the bounds of constitutional behavior, in part because "[a]lthough Ogletree suffered no permanent physical scarring, his injuries did require medical treatment." *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1085-1086 (11th Cir. 1986).

In this case, plaintiff has not put forth an allegation regarding what type of physical injury he suffered as a result of Pentrich's conduct of closing the cell door on plaintiff's shoulder, "almost catching [his] arm[.]" Doc. Ent. 1 at 11 ¶ 26.  *Pryor v. Cox*, No. 97-3912, 1999

WL 1253040, **1 (6th Cir. 1999) ("Although Pryor alleged that he was subjected to bad food, unsanitary conditions, and excessive heat, he did not claim that he suffered any physical injury as a result of this treatment. Under 42 U.S.C. § 1997e(e), a prisoner must show physical injury in order to maintain a civil action for any mental or emotional injury suffered while in custody."). Nor are his allegations supportive of a conclusion that he is living below acceptable prison standards. For example, plaintiff does not allege that he was denied medical treatment for any injury resulting from Pentrich shutting the cell door on plaintiff's shoulder. *See Wilson v. Seiter*, 893 F.2d 861, 864-865 (6th Cir. 1990) (internal citations omitted) ("Specific conditions found to violate the eighth amendment include the denial of adequate access to shower facilities, denial of medical treatment, overcrowding, threats to safety, vermin infestation, inadequate lighting, inadequate ventilation, unsanitary eating conditions, and housing of inmates with known dangerous individuals."), *vacated and remanded on other grounds by* 501 U.S. 294, 304-306 (1991).

Plaintiff's failure to allege an injury suggests that the alleged use of force was *de minimis*. "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotations and citations omitted). *See also DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)) ("while significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimis* use of physical force." "Thus, not every push or shove by a prison guard

violates a prisoner's constitutional rights."  "Officer Smith's simple act of shoving Mr. DeWalt qualifies as the kind of *de minimis* use of force that does not constitute cruel and unusual punishment."); *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) ("absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*."); *Outlaw v. Newkirk*, 259 F.3d 833, 839, 840 (7th Cir. 2001) ("the minor nature of Outlaw's injuries strongly suggests that the force applied by Mable was *de minimis*." "the minor nature of the injury coupled with the absence of any other indicia of malice on Mable's part would force us to conclude that it does not rise to the level of a constitutional violation."); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) ("*De minimis* applications of force are necessarily excluded from the cruel and unusual punishment inquiry.") (citing *Hudson*).

**d.**     Second, to the extent, if at all, plaintiff's Eighth Amendment claim is based upon Pentrich's and/or Murdock's verbal threats and harassment, plaintiff's claims would not be protected by the Eight Amendment's prohibition on cruel and unusual punishment.  Plaintiff claims that Pentrich directed comments at plaintiff while applying a door card with only plaintiff's commitment name.  Doc. Ent. 15 at 2; Doc. Ent. 15 at 7.  Plaintiff specifically takes issue with eight (8) comments Pentrich made:

|     |     |
|-----|-----|
| (a) | "Hey Mr. Jordan, are you alright Mr. Jordan?" |
| (b) | "Set up, thats the best idea I heard all day Mr. Jordan." |
| (c) | "Hey, Mr. Jordan I'm going to get you a new name tag." |
| (d) | "Hey Mr. Jordan, you don't want your neighbors to know who you are Mr. Jordan[.]" |
| (e) | "Hey Mr. Jordan, where do you want your name tag[?]" |
| (f) | "Hey Mr. Jordan, I want to put it where you want it Mr. Jordan." |
| (g) | "Hey Mr. Jordan, up or down Mr. Jordan." |
| (h) | "Hey Mr. Jordan, you have a nice day Mr. Jordan." |

Doc. Ent. 1 at 10-11 ¶ 24.  He also mentions Pentrich's removal of the door card and Murdock's defacement of the cell-door card.  Doc. Ent. 1 at 11 ¶¶ 23, 27.  *See also* Doc. Ent. 1 ¶¶ 28, 31, 32.

However, verbal threats and harassment "...are necessarily excluded from the cruel and unusual punishment inquiry."  *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992). *See also Bridgeforth v. Ramsey*, No. 99-6179, 1999 WL 992978, *2 (10th Cir. Nov. 2, 1999) (citing *Northington*) and *Grant v. Fernandez*, No. 96-1788, 1997 WL 118257, *2 (N.D.Cal. Mar. 5, 1997), citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("...single cell search and threats and harassment, were not, objectively, 'sufficiently serious' to violate the Eighth Amendment."). *See also Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("If the beating in *Johnson [v. Glick*, 481 F.2d 1028 (2d Cir. 1973)] does not qualify as punishment, neither does the 'verbal abuse' or 'harassment' or 'arbitrariness' covered by the jury instructions here."); *Davis v. Michigan Department of Corrections*, 746 F.Supp. 662, 667 (E. D. Mich. 1990) (Zatkoff, J.) ("Plaintiff alleges nothing more than verbal abuse, which quite clearly does not implicate constitutional concerns."); *Miller v. Wertanen*, 109 Fed. Appx. 64, 65 (6th Cir. 2004) ("The district court properly concluded that one instance of deprivation of books, linens, food trays, and mail did not violate the Eighth Amendment, and that verbal harassment was not punishment that violated Miller's constitutional rights.") (citing *Ivey*, 832 F.2d at 955); *Alder v. Anderson*, No. 06-CV-12612, 2006 WL 1791338, *2 (E.D. Mich. June 27, 2006) (Cohn, J.).

**5.     The Court need not determine whether plaintiff's claims under RLUIPA were clearly established or whether Pentrich and Murdock's conduct was objectively reasonable.**

**a.**     Defendants' qualified immunity argument with respect to plaintiff's individual capacity claims is, at its heart, based upon plaintiff's failure to satisfy the first prong of a qualified immunity analysis - the failure to allege violation of a constitutional right.  Doc. Ent. 13 at 10.

Therefore, this report declines to address defendant Pentrich or Murdock's entitlement to qualified immunity regarding those claims which I have recommended survive the instant motion to dismiss.

However, defendants have specifically argued that "liability for monetary damages under the RLUIPA is not 'clearly established'[,]" in support of which they cite several cases.[23]  Doc. Ent. 13 at 10-11.  With respect to qualified immunity, plaintiff contends that each of the defendants acted in defiance of MDOC PD 03.01.110 ¶A and RUM Taylor's/ADW Rivard's Step I grievance response.  Plaintiff contends that MDOC PD 03.01.110 "conforms to the federal law that a dual-name policy sufficiently satisfies a prisoner's free exercise of religious expression, belief, and practice[.]" Doc. Ent. 15 at 23.

**b.**    The defense of qualified  immunity should only be addressed after determining whether plaintiff has stated a constitutional claim upon which relief can be granted.  "[T]he better approach is to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."  *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The Supreme Court has stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

_____

[23]*Gooden v. Crain*, 405 F.Supp.2d 714 (E.D. Tex. 2005); *Smith v. Haley*, 401 F.Supp.2d 1240, 1250 (M.D. Ala. 2005); *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 326 F.Supp.2d 1140, 1162 (E.D. Cal. 2003).  Doc. Ent. 13 at 10.

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978) and *Wood v. Strickland,* 420 U.S. 308, 322 (1975)) (footnote omitted.) "[Q]ualified immunity would be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took action *with the malicious intention* to cause a deprivation of constitutional rights or other injury[.]'" *Harlow*, 457 U.S. at 815 (citing *Wood*, 420 U.S. at 322).

The doctrine of qualified immunity is intended to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow*, 457 U.S. at 806. The Sixth Circuit has stated that the qualified immunity inquiry requires a three-step analysis: (1) has plaintiff alleged a violation of a constitutional right?; (2) if so, was that right clearly established at the time of the alleged conduct?; and (3) if the right was clearly established, has plaintiff alleged and sufficiently supported that the official actions were objectively unreasonable in light of this clearly established right? *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996). Ultimately, "the burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

**c.** If the Court agrees with my foregoing conclusions that plaintiff's RLUIPA claims do not survive a motion to dismiss, then the Court need not consider whether plaintiff's rights were clearly established or whether defendants' conduct was objectively reasonable. *County of Sacramento*, 523 U.S. at 842 n.5; *Dickerson*, 101 F.3d at 1157-1158.

**6.** **Defendants' request for costs and fees is premature.**

Defendants request an assessment of costs and fees. Doc. Ent. 13 at 2. The request is premature. Should the Court enter judgment in favor of defendants, they may present a bill of costs to the clerk of this Court pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1). If defendants seek attorney fees pursuant to 42 U.S.C. § 1988, they should follow the procedure set forth in Fed. R. Civ. P. 54(d)(2).

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, ALF-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 3/5/08

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on March 5, 2008.

s/Eddrey Butts
Case Manager