UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMONE JORDAN,

        Plaintiff,

                                        CASE NO. 06-CV-10979-DT
                                        JUDGE PAUL D. BORMAN
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

    v.

PATRICIA CARUSO,
PAUL H. RENICO,
TODD PENTRICH,
BEVERLY MURDOCK and
NEMUS GONZALES,

        Defendants.

_____/

## SUPPLEMENTAL REPORT AND RECOMMENDATION REGARDING DEFENDANTS' RULE 12(b) MOTION TO DISMISS OR ALTERNATIVE RULE 56(b) MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 13)

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    Defendants' First Dispositive Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.    Defendants Second Dispositive Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      D.    My March 5, 2008 Report and Recommendation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      E.    This Report Treats Defendants' Motion Solely as a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 ("Defenses and Objections"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      F.    42 U.S.C. § 1997e ("Suits by prisoners") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      G.    Plaintiff's Claims Concern the Display of His Name on His Door Card. . . . . . . . . . . . . . . . . . 10
      H.    Defendants' Second Dispositive Motion Should Be Granted in Part and Denied in Part to the Extent It Seeks Dismissal of Plaintiff's First Amendment, Fourteenth Amendment, Conspiracy and State Law Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          1.    Plaintiff's First Amendment retaliation claims against Pentrich and Murdock survive the instant motion to dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          2.    Plaintiff's equal protection claims survive the motion to dismiss. . . . . . . . . . . . . . . 22
          3.    Plaintiff's conspiracy claims under 42 U.S.C. § 1985(3) against Pentrich and Murdock survive defendants' motion to dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
          4.    The Court should not exercise supplemental jurisdiction over plaintiff's state law claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

III.   NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**I.    RECOMMENDATION:** The Court should grant in part and deny in part defendants'

motion to dismiss with respect to plaintiff's First Amendment, Fourteenth Amendment,

conspiracy and state law claims, on the basis that plaintiff has failed to state claims upon which

relief may be granted.   Specifically, the Court should grant defendants' motion to dismiss with

respect to plaintiff's First Amendment free exercise claim but deny defendants' motion to

dismiss with respect to plaintiff's First Amendment retaliation claims (Section II.H.1).   Next, the

Court should grant defendants' motion with respect to plaintiff's Fourteenth Amendment

substantive due process claims and deny defendants' motion with respect to plaintiff's

Fourteenth Amendment equal protection claim (Section II.H.2).   Also, the Court should deny

defendants' motion to dismiss with respect to plaintiff's 42 U.S.C. § 1985(3) conspiracy claims

against Pentrich and Murdock but should grant the motion to dismiss with respect to plaintiff's

42 U.S.C. § 1986 conspiracy claims against Gonzales, Renico and Caruso (Section II.H.3).

Finally, the Court should not exercise supplemental jurisdiction over plaintiff's state law claims

(Section II.H.4).

**II.    REPORT:**

**A.    Procedural History**

On March 6, 2006, while incarcerated at Chippewa Correctional Facility (URF), plaintiff

filed a fee-paid, pro se civil rights complaint.  Doc. Ent. 1-2.  Defendants are Michigan

Department of Corrections (MDOC) Director Patricia Caruso, former St. Louis Correctional

Facility (SLF) Warden Paul H. Renico, SLF Sgt. Nemus Gonzales, and SLF RUMs Todd

Pentrich and Beverly Murdock.  Doc. Ent. 1-2 ¶¶ 2-6, Doc. Ent. 5 at 8.

The facts underlying the complaint stem from plaintiff's March 4, 2003, Step I grievance

regarding plaintiff's door card.  Doc. Ent. 1-2 ¶¶ 18-30.  Generally, plaintiff generally claims this

case is brought pursuant to 42 U.S.C. §§ 1983,[1] 1985,[2] 1986[3] and 1988,[4] as well as 42 U.S.C. § 2000cc-1.[5]  Doc. Ent. 1-2 ¶ 8.  He seeks declaratory, injunctive and monetary relief.  Doc. Ent. 1-2 ¶¶ 36-38.  The complaint is signed under penalty of perjury.  Doc. Ent. 1-2 at 19.

Plaintiff is incarcerated at Bellamy Creek Correctional Facility (IBC).[6]

## B.      Defendants' First Dispositive Motion

On June 2, 2006, defendants Caruso, Renico, Pentrich, Murdock and Gonzales filed a motion for dismissal for lack of exhaustion.  Doc. Ent. 5.  They argued that "[t]he plaintiff ha[d] not demonstrated that he exhausted all available administrative remedies since he failed to demonstrate that he filed or was prevented from filing grievances against each defendant setting forth the allegations of mistreatment of wrongdoing forming the basis of the constitutional claims asserted against each of the defendants."  Doc. Ent. 5 at 11.

On January 26, 2007, I entered a report recommending that the Court deny without prejudice defendants' motion to dismiss.  Doc. Ent. 10.[7]  On March 7, 2007, Judge Borman

---

[1] 42 U.S.C. § 1983 ("Civil action for deprivation of rights").

[2] 42 U.S.C. § 1985 ("Conspiracy to interfere with civil rights").

[3] 42 U.S.C. § 1986 ("Action for neglect to prevent").

[4] 42 U.S.C. § 1988 ("Proceedings in vindication of civil rights").

[5] 42 U.S.C. § 2000cc-1 ("Protection of religious exercise of institutionalized persons").

[6] On July 13, 2006, Judge Borman referred this case to me to conduct all pretrial proceedings.  Doc. Ent. 6.

[7] Plaintiff claims he did not receive notice of this report and recommendation until he received the Court's March 7, 2007, order on March 12, 2007.  Doc. Ent. 15 at 29 ¶¶ 13, 14. Plaintiff claims he discovered his file in this case was missing.

entered an order accepting my report and recommendation and denied without prejudice defendants' motion to dismiss.  Doc. Ent. 12.

## C.    Defendants Second Dispositive Motion

On June 25, 2007, defendants Gonzales, Caruso, Renico, Pentrich and Murdock filed a Rule 12(b) motion to dismiss or alternative Rule 56(b) motion for summary judgment.  Doc. Ent. 13.  They argue that (I) "[t]he complaint fails to state a federal claim[,]" and (II) "[t]he claims are barred by immunity."  Doc. Ent. 13 at 7-10.

On July 11, 2007, I entered an order setting the response deadline for defendants' dispositive motion for August 13, 2007.  Doc. Ent. 14.  On August 16, 2007, plaintiff filed a response.  Doc. Ent. 15.[8]  This report treats plaintiff's response as timely.  It is dated August 12,

---

Doc. Ent. 15 at 30 ¶¶ 19, 22 (this report interprets plaintiff's claims of difficulty accessing his file as justification for permitting him an extension of time within which to object to my report and recommendation and not as an independent claim).

He prepared a letter to the Court, dated March 14, 2007, in which he sought copies of certain documents in this case; however, he was not permitted to send it via expedited legal mail in violation of MDOC PD 05.03.118 ("Prisoner Mail").  Doc. Ent. 15 at 30-31 ¶¶ 23, 24.  Plaintiff claims he did not have an opportunity to read my report and recommendation until he received the copies he had requested from the Court - on or about March 26, 2007.  Doc. Ent. 15 at 31 ¶ 25.

On or about April 12, 2007, he completed a prisoner kite. Doc. Ent. 15 at 39.  In a memorandum dated April 16, 2007, he was informed that there was "no record of legal mail coming in for [him] during either January or February."  Doc. Ent. 15 at 40.

In any event, plaintiff registers objections to the report and recommendation.  Doc. Ent. 15 at 31-32 ¶¶ 26, 27.  Perhaps this is what plaintiff is referring to as his "motion for relief from judgment".  *See* Doc. Ent. 15 at 26, 32, 34.

[8]Attached to plaintiff's response are (1) a February 22, 2006, kite response memorandum from URF Chaplain Rev. Sandy Robert Shaw (Doc. Ent. 15 at 35); (2) a copy of MDOC PD 03.01.110 ("Prisoner/Parolee Name Changes"), effective 08/31/98 (Doc .Ent. 15 at 36-37); (3) a February 27, 1997, memorandum regarding plaintiff's name change (Doc. Ent. 15 at 38); (4) an April 12,

2007, Doc. Ent. 15 at 24, this report assumes that plaintiff's response was delivered immediately

to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a

prisoner's "notice of appeal was filed at the time petitioner delivered it to the prison authorities

for forwarding to the court clerk.").

**D.      My March 5, 2008 Report and Recommendation**

My March 5, 2008 report recommended that the Court grant in part and deny in part

defendants' Rule 12(b) motion to dismiss or alternative Rule 56(b) motion for summary

judgment. Doc. Ent. 19. Specifically, it recommended that the Court grant the motion to the

extent it sought dismissal of the claims against defendants Gonzales, Renico and Caruso (Section

II.G.2); dismissal of plaintiff's Eighth Amendment claim (Section II.G.4); and dismissal of

plaintiff's RLUIPA claims (Section II.G.3).

My report also stated that defendants' motion did not seek dismissal of plaintiff's First

Amendment, Fourteenth Amendment, conspiracy or state law claims. Doc. Ent. 19 at 14. On

March 19, 2008, defense counsel filed objections to the report, contending (1) that sovereign

immunity did extend to plaintiff's request for declaratory and injunctive relief, Doc. Ent. 20 at 1-

2; (2) that the motion to dismiss did seek dismissal of the entire complaint, including plaintiff's

First and Fourteenth Amendment claims and his conspiracy claim, Doc. Ent. 20 at 2-4; and (3)

"plaintiff bore the burden of pointing to clearly established law that dictates a conclusion that

being called 'Mr. Jordan' and the alleged removal or defacement of door card violates his right

to freedom of expression; freedom of religious exercises, retaliation, due process, equal

---

2007, prisoner kite (Doc. Ent. 15 at 39); (5) an April 16, 2007,
grievance response (Doc. Ent. 15 at 40); (6) a copy of MDOC PD
03.02.130 ("Prisoner/Parolee Grievances"), effective 01/01/01
(Doc. Ent. 15 at 41-47).

protection, and the law governing conspiracy claims[,]" Doc. Ent. 30 at 4-5. Thereafter, on

March 31, 2008, Judge Borman entered an order remanding my report and recommendation for

immediate consideration of plaintiff's other constitutional claims. Doc. Ent. 21.

**E.      This Report Treats Defendants' Motion Solely as a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 ("Defenses and Objections").**

Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections. As

to how defenses should be presented, the rule states in pertinent part:

> Every defense to a claim for relief in any pleading must be asserted in the
> responsive pleading if one is required. But a party may assert the following
> defenses by motion: . . . (6) failure to state a claim upon which relief can be
> granted[.]

Federal Rules of Civil Procedure 12(b)(6). "If, on a motion asserting the defense numbered (6)

to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters

outside the pleading are presented to and not excluded by the court, the motion shall be treated as

one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.

R. Civ. P. 12(b).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965

(2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to

relief above the speculative level, . . . on the assumption that all the allegations in the complaint

are true[.]" *Bell Atlantic Corp.*, 127 S. Ct. at 1965 (citations and quotations omitted). It is not

enough that "the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 1968. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1970. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974. Claims should be "nudged . . . across the line from conceivable to plausible" to avoid dismissal. *Id.*

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A James W. Moore, Moore's Federal Practice ¶ 12.07 (2d ed. 1995).

Although defendants' June 25, 2007, dispositive motion is alternatively labeled as a motion for summary judgment, defendants have not attached any evidence to their complaint, for example affidavits or prison records. Therefore, the instant motion is treated solely as a Fed. R. Civ. P. 12 motion to dismiss.

**F.      42 U.S.C. § 1997e ("Suits by prisoners")**

Title 42 of the United States Code governs the public health and welfare. Section 1997e governs 42 U.S.C. § 1983 suits by prisoners. With regard to the dismissal of prisoner lawsuits, 42 U.S.C. § 1997e(c) provides:

> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.
>
> (2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c)(1)-(2).

Plaintiff's complaint specifically lists his claims for relief as based on the First, Eighth and Fourteenth Amendments, as well as 42 U.S.C. § 2000cc-1 ("Protection of religious exercise of institutionalized persons");[9] Mich. Comp. Laws § 750.147b ("Ethnic intimidation; violation, penalty; civil action, damages, costs") and Mich. Comp. Laws § 691.1407 ("Governmental immunity from tort liability"). Doc. Ent. 1-2 ¶¶ 31-35.[10] Defendants' motion acknowledges this. Doc. Ent. 13 at 7.

Furthermore, in his response to defendants' second dispositive motion, plaintiff characterizes these claims for relief as follows: (1) freedom of speech; (2) freedom of religious

---

[9] Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc - 2000cc-5.

[10] Effectively, plaintiff is requesting that the Court exercise supplemental jurisdiction over his state law claim pursuant to 28 U.S.C. § 1367 ("Supplemental jurisdiction"). Doc. Ent. 1-2 ¶ 10.

practice; (3) retaliation for seeking redress of grievance concerning ethnic and religious name change; (4) 42 U.S.C. § 2000cc-1; (5) right to be free from cruel and unusual punishment; (6) right to be free from egregious abuse of governmental power; (7) right to equal protection of the laws; and (8)-(9) violations of 42 U.S.C. §§ 1985, 1986.[11]  Doc. Ent. 15 at 4.[12]  Defendants, although not required to do so, did not refute these characterizations with a reply.

Taking into consideration the recommendations reached in my March 5, 2008 report and recommendation (Doc. Ent. 19) and Judge Borman's March 31, 2008 order remanding certain issues for consideration (Doc. Ent. 21), this report will address plaintiff's claims based upon his First Amendment rights to freedom of expression, freedom of religious practice and freedom from retaliation for seeking redress of grievances concerning the Plaintiff's ethnic religious name change.  Doc. Ent. 1-2 ¶¶ 31a, 32a, 33a, 34a and 35a.

This report will also address plaintiff's claims based upon his Fourteenth Amendment rights to freedom from egregious abuse of governmental power and equal protection of the laws. Doc. Ent. 1-2 ¶¶ 31d, 32d, 33d, 34d and 35d.  Additionally, this report will address plaintiff's conspiracy claims.  Doc. Ent. 1-2 at 4 ¶ 8; Doc. Ent. 15 at 4.  Finally, it will address plaintiff's request that the Court exercise supplemental jurisdiction over his state law claims.  Doc. Ent. 1-2

---

[11]This report takes into account that "the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Still, it recognizes that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law."  *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

[12]Plaintiff's March 6, 2006 characterization of his claims does not mention Mich. Comp. Laws § 750.147b or Mich. Comp. Laws § 691.1407.

at 4 ¶ 10; Doc. Ent. 1-2 ¶¶ 31e, 32e, 33e, 34e and 35e (Mich. Comp. Laws § 750.147b); Doc. Ent. 1-2 ¶¶ 33f, 34f, 35f (Mich. Comp. Laws § 691.1407).

### G.     Plaintiff's Claims Concern the Display of His Name on His Door Card.

These facts, which were set forth in my earlier report and recommendation, are repeated here for ease of reference.  Plaintiff became a member of the Moorish Science Temple of America, Inc. (MSTA) in 1991.  Doc. Ent. 15 at 26 ¶ 3.  MSTA is a recognized religious group authorized to conduct group religious services/activities.  MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners"), Attachment A (effective 09/20/07).  According to plaintiff, "all who join the [MSTA] are required to and must use the tribal name 'El' or 'Bey' [in] conjunction with the slave name . . . and refrain from using only the slave name without 'El' or 'Bey'[.]" Doc. Ent. 15 at 27 ¶ 5.  Plaintiff contends that "'El' is a tribal name which re-connects honoring [his] ancestry divine creed", "signif[ies] discontinuance of clinging to names and principles that delude[] to slavery[,]" and recognizes him as a Moor.  Doc. Ent. 15 at 27-28 ¶ 8.  Plaintiff contends that to accept simply "Jordan" is "to accept a state of mind of mental and physical slavery disconnecting [him] from the GREAT SPIRIT . . . and from [his] ancestry[,]" and "to accept clinging to names and principles that delude[] to slavery[.]" Doc. Ent. 15 at 28 ¶ 10.  Being referred to as "merely 'Jordan'" is denigrating, dehumanizing, and degrading and thus derogatory[.]" Doc. Ent. 15 at 28 ¶ 11.

On March 26, 1992, plaintiff completed an affidavit informing the MDOC and its agents to refer to plaintiff as Simone Tyrone Jordan-El, in accordance with MDOC PD 03.01.110 ("Prisoner/Parolee Name Changes"").[13]  Doc. Ent. 15 at 27 ¶ 6, 38.  A February 27, 1997,

---

[13] "Name changes approved by the Department prior to April 1, 1996 based on a notarized affidavit shall continue to be

MDOC Memorandum from the Marquette Branch Prison (MBP) Records Office Supervisor

acknowledged a computer error that had occurred regarding plaintiff's name change and stated

that plaintiff "should be referred to by his legal name of: SIMONE TYRONE JORDAN-EL."

Doc. Ent. 15 at 38.

Several years later, on March 4, 2003, plaintiff completed a Step I grievance form

because "the SLF Unit 5 Housing Team refus[ed] to provide [him] a door card that reflect[ed]

[his] name change[.]" Doc. Ent. 1-2 at 9 ¶ 18. The grievance states:

> This grievance is on Unit 5 Housing Team 7 to 3 shift and 3 to 11 shift for
> refusing to provide a proper door card in compliance with PD 03.01.110.
>
> On 3/4/2003 when Unit 5 Housing Staff came to put my door card on my door I
> requested that it reflect my name. When the green tag sought to comply Unit 5
> Black tags informed him that 'we don't recognize that.' This has been a continual
> practice since I been at this Facility.
>
> I request that my name reflect in compliance with PD 03.01.110.
>
> Housing Unit Team means from the RUM on down to the green and red tag state
> employees.

Doc. Ent. 1-2 at 21 (SLF-03-03-00715-17a).

On March 11, 2003, RUM Taylor interviewed plaintiff regarding the grievance, during

which plaintiff relied upon MDOC PD 03.01.110. Doc. Ent. 1-2 ¶¶ 19, 20. The grievance was

resolved that day by Taylor "agreeing to issue a directive[.]" Doc. Ent. 1-2 ¶¶ 12, 21. On March

12, 2003, Taylor responded to the grievance, stating in part: "Unit staff were directed to prepare

a new door card which reflects both the commitment name and legal name of prisoner Jordan-El

---

recognized and documented in the same manner as a court ordered
name change until the prisoner or parolee has discharged from the
Department's jurisdiction." MDOC PD 03.10.110 ¶ A, effective
08/31/1998.

and place it on his assigned cell door.  Prisoner Jordan-El has now indicated that he considers this matter satisfactorily resolved."  On March 13, 2003, Steve Rivard reviewed the grievance.  Doc. Ent. 1-2 at 22.  The SLF Unit 5 Housing Team "prepared a new door card with both the Plaintiff's commitment name and ethnic religious name and placed [it] on [his] assigned cell-door[.]"  Doc. Ent. 1-2 ¶ 22.

On March 31, 2003, Taylor transferred to another MDOC facility.  Plaintiff claims that on April 1, 2003, SLF's Unit 5 Housing Team reopened plaintiff's grievance, as Pentrich removed the door card which Taylor "had directed be prepared and placed on the Plaintiff's assigned cell-door[.]"  Doc. Ent. 1-2 ¶¶ 13, 23.[14]  Pentrich replaced it with a cell-door card which reflected only plaintiff's commitment name.  Doc. Ent. 15 at 2.  Pentrich allegedly antagonized, taunted, annoyed, intimidated and baited plaintiff with several comments.  Doc. Ent. 1-2 ¶ 24.

That day, plaintiff sought redress from Pentrich's supervisor, Gonzales.  Doc. Ent. 1-2 ¶ 25, Doc. Ent. 15 at 20.  According to plaintiff, Murdock "notified Defendant Pentrich of the Plaintiff's seeking to complain and notified Defendant Gonzales of the subject-matter of the Plaintiff's verbal complaint, and Defendant Gonzales failed to supervise as was done by RUM Taylor[.]"  Doc. Ent. 15 at 2.  Gonzales told plaintiff, "Move on; I don't want to talk about it."  Doc. Ent. 1-2 ¶ 25.

---

[14]In his request for relief, plaintiff seeks the issuance of a declaratory judgment stating that Pentrich's and Murdock's insubordination toward Taylor's Step I response was because Taylor is African-American and that the Step III grievance response "authorized and agreed with the insubordination towards RUM Taylor's directive because RUM Taylor is African American[.]" Doc. Ent. 1-2 ¶¶ 36(d), (e).

Once Pentrich and Murdock, 1st shift officers, left work, plaintiff "removed the cell-door identification card reflecting only the commitment name which Defendant Pentrich had put on [his] cell-door, and [he] requested the SLF [2nd] shift staff to do another cell-door identification card for placement on [his] cell door[.]" Doc. Ent. 15 at 33 ¶ 32. "[T]he SLF 2nd shift provided another cell-door identification card reflecting both the commitment name and [his] legal name[.]" Doc. Ent. 15 at 33 ¶ 33.

On April 2, 2003, Pentrich "closed the cell door on the Plaintiff['s] shoulder almost catching the Plaintiff's arm[.]" Doc. Ent. 1-2 ¶ 26. Murdock "came and wrote on the cell-door identification card defacing the surname 'El'." Doc. Ent. 15 at 33 ¶ 33; Doc. Ent. 1-2 ¶ 27. Plaintiff requested a Step II grievance appeal form based upon Pentrich and Gonzales's conduct. Doc. Ent. 15 at 2. The request was received on April 2, 2003. The SLF Grievance Coordinator stated that the request was late and directed plaintiff to submit the re-opened grievance to Step III. Doc. Ent. 1-2 ¶ 14 & Doc. Ent. 1-2 at 24.

On April 4, 2003 and April 8, 2003,[15] plaintiff submitted two Step III appeals - one as an appeal of his Step II response and the other as a direct appeal on the bases of racial and/or ethnic

_____

[15]Plaintiff lists certified mail numbers for the April 4, 2003 and April 8, 2003 mailings. Compl. ¶ 15.

discrimination.[16]  Doc. Ent. 1-2 ¶ 15 & Doc. Ent. 1-2 at 26-28.  Plaintiff's April 4, 2003 Step III

grievance appeal states:

> After resolving this grievance via RUM Taylor, upon RUM Taylor transferring to
> another Department Facility, the Unit 5 Housing Team began removing all
> prisoners' door cards with Cultural/Religious/Islamic Names in which my door
> card was taken off by staff also contrary to the Grievance Resolution Order via
> RUM Taylor.

Doc. Ent. 1-2 at 26.  Plaintiff's Step III grievance was denied on May 28, 2003.  In part, the Step

III response states that the Step II/Step III form "was properly forwarded to Prisoner Affairs",

pursuant to operating procedure.  Doc. Ent. 1-2 ¶ 16 & Doc. Ent. 1-2 at 30.

On or about September 17, 2004, plaintiff wrote to the Carson City Correctional Facility

(DRF) grievance coordinator.  Plaintiff stated that he was on modified access and requested

grievances for three issues, one of which stated in part: "In March 2003 after resolving a

grievance concerning my door, SLF officers Pen[t]rich & Murdock conspired to remove my door

card, put it back on with 'EL' on my name, then written on, taunted, and hit with a cell door. . . .

These repeated acts are a continuing course of conduct violating authorized expression

sanctioned and e[n]couraged by [MDOC] Director's Office, Deputy Director of Administrative

Programs."  Doc. Ent. 1-2 at 32.  Plaintiff claims he was seeking to grieve Caruso's conduct

---

[16]Plaintiff notes that MDOC PD 03.02.130 provides that "[a]
grievant may file a grievance alleging racial or ethnic
discrimination [and/or] staff brutality or corruption directly to
Step III."  MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"),
effective 12/19/2003, ¶ S; effective 04/28/03 ¶ R; effective
11/01/00 ¶ II.  The policy also provides that "[u]pon receipt,
the grievance shall be carefully reviewed to determine whether to
respond directly to the grievance, request an investigation into
the issue raised in the grievance, or return it to the grievant
for filing at Step I."  *Id*.

authorizing and encouraging Pentrich's and Murdock's conduct. His request was denied. Doc. Ent. 1 ¶ 17 & Doc. Ent. 1-2 at 32.

**H.  Defendants' Second Dispositive Motion Should Be Granted in Part and Denied in Part to the Extent It Seeks Dismissal of Plaintiff's First Amendment, Fourteenth Amendment, Conspiracy and State Law Claims.**

Plaintiff states that "[f]rom the time RUM Taylor transferred to a different M.D.O.C. Facility until the Plaintiff transferred from SLF Correctional Facility the Plaintiff's door card had been removed, damaged, destroyed and defaced by Defendants Pendrich and Murdock even though RUM Taylor had directed otherwise[.]" Doc. Ent. 1-2 ¶ 28.

Defendants contend that plaintiff's "claims are based on allegations that a correctional officer verbally antagonized, annoyed, intimidated and 'baited' the inmate and almost caught the inmate's arm in a cell door when he closed it; and that two officers removed a name card from a cell door." Doc. Ent. 13 at 4. Defendants claim that none of the federal constitutional and statutory provisions that plaintiff cites "guarantee that an inmate will not be subjected to verbal harassment." Doc. Ent. 13 at 8.

As defendants point out, "allegations of harassment and verbal threats are insufficient to state a civil rights claim under § 1983. Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights. Verbal threats and abuse made in retaliation for filing a grievance are likewise not actionable." *Alder v. Anderson*, No. 06-CV-12612, 2006 WL 1791338 (E.D. Mich. June 27, 2006) (Cohn, J.) (internal citations omitted). "Plaintiff alleges nothing more than verbal abuse, which quite clearly does not implicate constitutional concerns." *Davis v. Michigan Department of Corrections*, 746 F.Supp. 662, 667

(E.D. Mich. 1990) (Zatkoff, J.). Specifically, defendants point to the portion of plaintiff's claim which asserts that Pendrich made the following comments:

(a) "Hey Mr. Jordan, are you alright Mr. Jordan?"
(b) "Set up, thats the best idea I heard all day Mr. Jordan."
(c) "Hey, Mr. Jordan I'm going to get you a new name tag."
(d) "Hey Mr. Jordan, you don't want your neighbors to know who you are Mr. Jordan[.]"
(e) "Hey Mr. Jordan, where do you want your name tag."
(f) "Hey Mr. Jordan, I want to put it where you want it Mr. Jordan."
(g) "Hey Mr. Jordan, up or down Mr. Jordan."
(h) "Hey Mr. Jordan, you have a nice day Mr. Jordan."

Doc. Ent. 1-2 at 10-11 ¶ 24.

Also, defendants claim that "[c]ouching claims in terms of 'religious rights' does not elevate such averments to the level of federal constitutional violations." Doc. Ent. 13 at 8. In support of this statement, defendants cite *Dekoven v. Bell*, 140 F.Supp.2d 748 (E.D. Mich. 2001) (Lawson, J.), wherein this Court stated, "plaintiff has no constitutional right to be recognized and treated as the 'Messiah-God' or any other holy, extra-worldly, or supernatural being or power." *Dekoven*, 140 F.Supp.2d at 756-757. Furthermore, the Supreme Court has stated that "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." *Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 717-718 (1981). *See also Flick v. Leonard*, No. 95-1559, 1996 WL 153914, *1 (6th Cir. Apr. 2, 1996) ("To exceed the substantial burden threshold, government regulations must significantly inhibit or constrain conduct or expression that manifest some

16

central tenant of the prisoner's beliefs, must meaningfully curtail a prisoner's ability to adhere to his faith, or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion.") (citing *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995)[17]).  Defendants contend that "[t]he Complaint averments in this matter fall far short of demonstrating the existence of a 'substantial burden' on the plaintiff's religious exercise." Defendants contend that "a prison inmate does not have a federally secured right to certain treatment of a 'door card'; therefore, the plaintiff's averments that Defendants Pentrich and Murdock 'tampered' with a door card in 2003 fails to state a claim."  Doc. Ent. 13 at 9.

With respect to my March 5, 2008 conclusion that defendants' motion did not seek dismissal of certain claims, defendants objected, construing their motion as asserting that "the plaintiff's constitutional claims are not cognizable because allegations of verbal abuse or harassment are not sufficient to maintain a cause of action of any such claim under § 1983." Doc. Ent. 20 at 3.  Defendants assert that separate analysis of "the substantive law applicable to First Amendment claims, conspiracy claims, and Fourteenth Amendment claims[,]" is "unwarranted where [defendants] have cited clearly established law that indicates that an inmate's complaints of verbal abuse and harassment are insufficient to sustain a constitutional claim under 42 USC § 1983."  Doc. Ent. 20 at 4.

1.      **Plaintiff's First Amendment retaliation claims against Pentrich and Murdock survive the instant motion to dismiss.**

---

[17]Some years after *Werner*, the Tenth Circuit stated:  "Under the definition of 'religious exercise' in 42 U.S.C. § 2000cc-5(7)(A), however, *a religious exercise need not be mandatory for it to be protected under RFRA.*"  *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 796 (10th Cir. Oct. 25, 2005) (emphasis in original); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 662 (10th Cir. June 20, 2006) (emphasis in original).

**a.**      The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances."  U. S. Const. amend. I.  Plaintiff's complaint clearly intends to bring First Amendment claims, based upon his rights to freedom of expression, freedom of religious practice and freedom from retaliation for seeking redress of grievances, concerning the Plaintiff's ethnic religious name change.  Doc. Ent. 1-2 ¶¶ 31a, 32a, 33a, 34a and 35a.

**b.**      As plaintiff points out at the beginning of his response with regard to his RLUIPA, freedom of expression/speech and freedom of religious practice claims, Doc. Ent. 15 at 5-8, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).  Nonetheless, the Sixth Circuit has considered a First Amendment free exercise challenge to a prison regulation that allegedly did not recognize plaintiff's religious name, and it found no merit to plaintiff's claim that "prison officials violated his First Amendment rights by refusing to use his religious name." *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999); *Porter v. Caruso*, 479 F.Supp.2d 687, 700 (W.D. Mich. 2007) (the Constitution does not guarantee a right "that prison officials will refer to him only by his chosen appellation."). *See also Jones v. Withrow*, No. 96-1730, 1997 WL 685370, *1 (6th Cir. Oct. 29, 1997) ("[t]he refusal of prison officials to change Jones's prison records to reflect his religious name does not violate Jones's constitutional rights.") (citing *Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir.1980)); *Shuaib v. Stiddum*, No. 88-5227, 1988 WL 86126, 1 (6th Cir. Aug. 18, 1988) ("the failure to refer to an inmate by a legally-adopted name simply is not

violative of the first amendment right to freedom of religion.") (citing *Akbar*, 634 F.2d at 340); *Mujihadeen v. Compton*, 627 F.Supp. 356, 357 (W.D. Tenn. 1985) ("a requirement that both committed names and names adopted for religious purposes be included on a prison I.D. card does not violate a prisoner's First Amendment right to freedom of religious expression.") (citing *Akbar*).[18]

**c.** To the extent plaintiff alleges a violation of his right to "freedom from retaliation for seeking redress of grievance concerning the Plaintiff's ethnic religious name change[,]" against defendants Pendrich and Murdoch, Doc. Ent. 1-2 ¶¶ 31(a), ¶ 32(a), his retaliation claim may be based upon the protected conduct of filing grievance SLF-03-03-00715-17a regarding the March 4, 2003 incident which was resolved by Taylor on March 11, 2003 (Doc. Ent. 1-2 ¶ 12, Doc. Ent. 1-2 at 20-22); the two April 4, 2003 grievances - both sent to Step III - after which a Third Step Grievance Response was made on May 28, 2003 (Doc. Ent. 1-2 ¶¶ 14-16, Doc. Ent. 1-2 at 23-30); or plaintiff's September 17, 2004 modified access status grievance request (Doc. Ent. 1-2 ¶ 17; Doc. Ent. 1-2 at 31-32).

Plaintiff's response addresses the three elements of a First Amendment retaliation claim. Doc. Ent. 15 at 8-13. With respect to his claim based upon retaliation, plaintiff cites *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff claims he engaged in protected conduct when he formally grieved and verbally complained about non-compliance with MDOC PD 03.01.110. Doc. Ent. 15 at 8-9. Plaintiff claims that adverse actions included his door card

---

[18]However, at least one Court has noted that "the state authorities must deliver mail to [plaintiff] addressed to him only as Salaam and must allow the addition of [his] current name to his clothing. The state, however, need reform its record keeping only to the extent necessary to allow [plaintiff] to receive services and information in his new name within the prison." *Salaam v. Lockhart*, 905 F.2d 1168, 1170 (8th Cir. 1990).

being removed, destroyed and replaced with a card which excluded plaintiff's religious/ethnic/legal name; verbal comments which disrespected plaintiff's religious/ethnic/legal name; closing a cell-door on plaintiff's shoulder and almost catching plaintiff's arm; and defacing his cell-door card. Plaintiff claims these things were done to inflict psychological and/or physical harm. Doc. Ent. 15 at 10-11.

Plaintiff claims the causation element has been satisfied, based upon the timing of events - his March 4, 2003 request; its denial; his same-day grievance; Taylor's subsequent transfer, followed by Pentrich's removal of the card and comments; Murdock informing Pentrich that plaintiff verbally complained to Gonzales and Murdock informing Gonzales of the subject of plaintiff's verbal complaint; Gonzales's response that he did not want to talk about it; Pentrich later hitting plaintiff with a cell door; and Murdock writing on plaintiff's cell door card. Doc. Ent. 15 at 11-13. Plaintiff also claims that causal connection is shown by Taylor and Rivard's Step I response and Pentrich's and Murdock's defiance of that response on the day following Taylor's transfer. Doc. Ent. 15 at 13. Plaintiff also claims the causation element is supported by disparate treatment. Doc. Ent. 15 at 13-14. Plaintiff claims that there was disparate treatment and that Pentrich and Murdock intentionally or purposefully exhibited an "invidious discriminatory animus where the removal, destruction, and replacement of the cell-door identification card was coupled along together with the repeated derogatory, degrading, dehumanizing, denigrating verbal comments and writing on the cell-door identification card, were all done specifically aimed at excluding the surname 'El' from [his] name which is evidence of intentional discriminatory animus[.]" Doc. Ent. 15 at 13. Plaintiff claims this evidence will be admissible under Fed. R. Civ. P. 404(b) and will show that the closing of the

cell door on his shoulder was deliberate and intended to harm him for exercising his First Amendment rights. Doc. Ent. 15 at 14.

As plaintiff recognizes in his response brief, "[a] retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff has alleged that he engaged in protected conduct when he verbally complained and formally grieved regarding his cell-door card. Even if the verbal threats would not constitute an adverse action,[19] plaintiff has listed a few actions which he alleges were done to him to inflict harm, and defendant does not argue that these actions were so *de minimis* that it deterred "a person of ordinary firmness from exercising his or her [protected] right[.]" *Thaddeus-X*, 175 F.3d at 398. Furthermore, plaintiff has explained the significance of his name change. Doc. Ent. 15 at 27-28 ¶¶ 5, 8, 10, 11. Finally, he argues that the timing of events and disparate treatment support a causal connection.

Based on the foregoing, plaintiff has stated a First Amendment retaliation claim upon which relief may be granted.

---

[19] *Carney v. Craven*, 40 Fed.Appx. 48, 50 (6th Cir. 2002) ("Even if the grievance was not frivolous, he did not state a claim for retaliation in the form of verbal harassment. An inmate has no right to be free from verbal abuse, and minor threats do not rise to the level of a constitutional violation.") (internal and external citations omitted).

**d.**       Plaintiff's retaliation claim might also be based upon an alleged violation of his First Amendment right against retaliation for engaging in the protected conduct of exercising his religion - i.e., that the protected conduct in which he was engaged is the practice of his MTSA religion. This would be distinct from a claim that defendants have violated his freedom to practice his religion. For the same reasons outlined above under the *Thaddeus-X* test, such a claim would also survive a motion to dismiss.

## 2.       Plaintiff's equal protection claims survive the motion to dismiss.

**a.**       Plaintiff brings a Fourteenth Amendment claim against each of the five defendants based upon his right to be free from the egregious abuse of governmental power and his right to equal protection of the laws. Doc. Ent. 1-2 ¶¶ 31(d)-35(d).

**b.**       Some of plaintiff's Fourteenth Amendment due process claims are governed by the First and Eighth Amendments. With respect to his claims based upon "substantive due process and egregious abuse of governmental power", Doc. Ent. 15 at 19-21, plaintiff responds that Pentrich and Murdock knew he was permitted to use his commitment and legal name as a result of RUM Taylor's Step I grievance response and MDOC PD 03.01.110. Plaintiff claims that Pentrich and Murdock were laying in wait and, in defiance of RUM Taylor's Step I grievance response and MDOC PD 03.01.110, "acted in concert removing cell-door identification cards with Islamic legal names and Defendant Gonzales with knowledge of the subject-matter of the Plaintiff's verbal complaint told the Plaintiff to 'Move on; I don't want to talk about it[.]'" Afterward, "Pentrich hit the Plaintiff's shoulder with a cell door . . . and . . . Murdock defaced the Plaintiff's cell-door identification card." Doc. Ent. 15 at 20. Plaintiff claims that "[t]he removal, destruction, and replacement of the cell-door identification card . . . along . . . with the repeated

derogatory, degrading, dehumanizing, denigrating verbal comments and writing on the cell-door identification card [was] done specifically aimed at excluding the surname 'El' from the plaintiff's name[.]" Doc. Ent. 15 at 20-21. Plaintiff claims this conduct supports the conclusion that Pentrich closing the cell door on plaintiff's shoulder was not unintentional but was meant to harm plaintiff for exercising his First Amendment rights. Doc. Ent. 15 at 21.

The Supreme Court has stated that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Plaintiff's retaliation claim is governed by the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-388 (1999). *See also Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 46 (1st Cir. 1992) ("[t]o the extent [appellant's] substantive due process claim is based on the alleged retaliation for his political views, it is coextensive with his First Amendment claim."); *Oppenheim v. Gutteridge*, 225 F.Supp.2d 185, 188 n.5 (D. Conn. 2002) ("To the extent plaintiff's due process claim is based on retaliation for her complaint to the union, it adds nothing to her claim based on the First Amendment.") (citing *Albright*, 510 U.S. at 273). *See also Chicago School Reform Bd. of Trustees v. Substance, Inc.*, 79 F.Supp.2d 919, 937 (N.D. Ill. 2000) (citing *Thaddeus-X* and *Nestor*).

Furthermore, "the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and justified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). "Any

protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Graham*, 490 U.S. at 395 n.10. *See also Husband v. Fair*, Civ. A. No. 86-1276-WAG, 1994 WL 548066, *6 (D. Mass. June 23, 1994) ("there is no reason why this rule should not also apply to Eighth Amendment claims alleging a failure to provide medical attention[.]").

**c.**      The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  Given the circumstances underlying this case, it seems that any due process claim would be based upon a deprivation of liberty, rather than a deprivation of life or property.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court considered "[t]he circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause."  *Sandin*, 515 U.S. at 474.  The Court reasoned that, in the prison context, "liberty" interests may arise in one of two ways.  First, a liberty interest may arise by virtue of the Due Process Clause itself, where the confinement imposed is "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime[.]"  *Id.* at 479 n.4 (discussing *Vitek v. Jones*, 445 U.S. 480 (1980) (transfer to state mental hospital implicates liberty interest) and *Washington v. Harper*, 494 U.S. 210 (1990) (involuntary administration of psychotropic drugs implicates liberty interests)).  Absent this type of qualitative change in punishment, a liberty interest may arise under state law.  However, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life." *Id*. at 484. Thus, under *Sandin* a plaintiff must show both

(1) that a state statute or regulation creates a liberty interest in mandatory terms; and (2) that he

suffered a restraint which imposed an atypical and significant hardship. *See Rimmer-Bey v.

Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *see also*, *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d

Cir. 1996).

With respect to a liberty interest arising by virtue of the Due Process Clause itself, a due

process claim remaining against Pentrich and Murdock based upon plaintiff's Fourteenth

Amendment right to "freedom from egregious abuse of governmental power[,]" Doc. Ent. 1-2 ¶¶

31(d), 32(d), would appear to be based upon substantive due process. I reach this conclusion by

noting that plaintiff's response to defendants' motion characterizes his due process claim as

substantive. Doc. Ent. 15 at 19-21. The fundamental rights protected by the substantive

component of the Fourteenth Amendment's Due Process Clause include "'the rights to marry, to

have children, to direct the education and upbringing of one's children, to marital privacy, to use

contraception, to bodily integrity, and to abortion.'" *Doe v. Michigan Department of State

Police*, 490 F.3d 491 (6th Cir. July 18, 2007) (citing *Washington v. Glucksberg*, 521 U.S. 702,

720 (1997)).

The fundamental right at issue here would be bodily integrity. This determination is

supported by plaintiff's reference to reference to *Gilson v. Cox*, 711 F.Supp. 354, 356-357 (E.D.

Mich. 1989) (Cook, J.).[20] Doc. Ent. 15 at 21. Plaintiff's allegations regarding the intent behind

---

[20]Plaintiff cites *Gilson v. Cox*, 711 F.Supp. 354, 356-357
(E.D. Mich. 1989) (Cook, J.), wherein this Court stated, "[i]n
*Stoneking v. Bradford Area School District*, 856 F.2d 594, 599
(3rd Cir.1988), the Court of Appeals for the Third Circuit

the treatment of his cell-door identification card or the comments that were made to him (Doc. Ent. 15 at 20-21) do not implicate the fundamental right to bodily integrity. To the extent plaintiff intends to claim that the cell door being closed on his shoulder is a violation his fundamental right to bodily integrity, Doc. Ent. 15 at 20-21, such a claim would be addressed by a First Amendment retaliation claim or an Eighth Amendment deliberate indifference claim, rather than a claim that he is subjected to a confinement which is "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime, and had 'stigmatizing consequences.'" *Sandin*, 515 U.S. at 479 n.4 (quoting *Vitek*, 445 U.S. at 493-494).

As for a liberty interest which might arise under state law, the specific accusations against Pentrich and Murdock which are contained within the portion of plaintiff's response entitled "substantive due process egregious abuse of governmental power[,]" mention RUM Taylor's grievance response and MDOC PD 03.01.110 as the bases upon which Pentrich and Murdock knew plaintiff was permitted to use his commitment and legal name. Plaintiff also alleges that Pentrich and Murdock acted in defiance of the grievance response and the policy directive. Doc. Ent. 15 at 20. These are not akin to claims that Taylor's grievance response or

─────────────────

determined that persons have a liberty interest, which is protected by the substantive component of the due process clause, in 'personal bodily integrity.' The *Stoneking* court concluded that this liberty interest in bodily integrity subsumes 'the right to be free from sexual abuse.' *Id.*" *Gilson*, 711 F.Supp. at 356.

The Court further stated that "consistent with the physical abuse cases which are grounded on substantive due process, a plaintiff must establish that the alleged infringement of his bodily integrity is 'literally shocking to the conscience.'" *Gilson*, 711 F.Supp. at 356.

However, *Gilson* was decided on May 2, 1989, just days before *Graham*, which was decided (May 15, 1989) and well before *Albright* (1994).

MDOC PD 03.01.110 created a liberty interest with respect to his religious name. *See also*

*McLaurin v. Morton*, 48 F.3d 944, 946 (6th Cir. 1995) ("Plaintiff sued Morton and Marriott under

42 U.S.C. § 1983, alleging that their failure to follow the policy directive violated a state-created

liberty interest protected by the Fourteenth Amendment[.]"); *Mackey v. Dyke*, 29 F.3d 1086,

1091 (6th Cir. 1994); *Davis v. Hensley*, No. 92-1659, 1993 WL 57515, 1 (6th Cir. March 4, 1993)

("The repeated use of explicitly mandatory language in connection with requiring specific

substantive predicates demands a conclusion that Michigan's Policy Directive created a protected

liberty interest."); *Shuaib v. Stiddum*, No. 88-5227, 1988 WL 86126, 1 (6th Cir. Aug. 18, 1988)

("plaintiffs' claim that Tennessee Department of Corrections Policy Directive 506.13 requires

defendants to use their new legally-adopted religious names must also fail due to the operation of

the rule of law established in *Parratt v. Taylor*, 451 U.S. 527, 543-44 [(1981)]. Under that case,

plaintiffs, who have alleged a random and unauthorized deprivation of a state-created liberty

interest, must plead and prove the inadequacy of any state remedy which might be available to

them. Review of the record discloses that plaintiffs have already successfully resorted to an

internal grievance procedure which has resulted in an order directing the use of their legal

names. Under such circumstances, plaintiffs can not now maintain an action under 42 U.S.C. §

1983.").[21]

---

[21]In *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme
Court reconsidered its statement in *Parratt* that "'the alleged
loss, even though negligently caused, amounted to a
deprivation.'" *Daniels*, 474 U.S. at 328 (citing *Parratt*, 451 U.S.
at 536-537). The Court held that "the Due Process Clause is
simply not implicated by a negligent act of an official causing
unintended loss of or injury to life, liberty, or property."
*Daniels v. Williams*, 474 U.S. 327, 328 (1986)

For these reasons, the Court should grant defendants' motion to the extent it seeks dismissal of plaintiff's Fourteenth Amendment due process claims against Pentrich and Murdock.

**d.**     With respect to his claims based upon 42 U.S.C. §§ 1985, 1986, and his Equal Protection claim, plaintiff mentions a discriminatory animus. Doc. Ent. 15 at 14-19.[22] Specifically, plaintiff claims that Pentrich's and Murdock's overt adverse acts were in defiance of MDOC PD 03.01.110 and RUM Taylor's resolution of the matter and the "defiant conduct was clearly based on intentional or purposeful invidious discriminatory animus where the removal, destruction, and replacement of the cell-door identification card was coupled along together with the repeated derogatory, degrading, dehumanizing, denigrating verbal comments and writing on the Plaintiff's cell-door identification card[.]" Plaintiff contends that "all were done specifically aimed at excluding the surname 'El' from the plaintiff's name which is evidence of intentional discriminatory animus[.]" Doc. Ent. 15 at 15. Plaintiff also claims that what happened to his cell-door card and the verbal comments are evidence "that closing of the cell-door on the Plaintiff's shoulder was not a mistake, but was deliberate, malicious, and callous intended to harm the Plaintiff for engaging in the exercise of First Amendment Rights[.]" Doc. Ent. 15 at 15-16. Citing ¶ 36(d) of his complaint, which alleges that Pentrich's and Murdock's "insubordination towards the new door card directed by RUM Taylor . . . was because RUM Taylor is African American i.e. Black[,]" plaintiff wonders why Pentrich and Murdock were laying "in wait until after RUM Taylor transferred to commit the Plaintiff's cited overt adverse action?" Doc. Ent. 15 at 16.

---

[22]Also, within his discussion of retaliation, he mentions disparate treatment.   Doc. Ent. 15 at 13-14.

Plaintiff notes that, the day after Taylor was transferred from SLF, Pentrich removed his cell-door identification card which listed both his commitment name and his legal name and replaced it with a card reflecting only plaintiff's commitment name, while making statements "specifically aimed at excluding the plaintiff's surname 'El'[.]" In support of this assertion, plaintiff refers to ¶¶ 23 and 24 of his complaint. Doc. Ent. 15 at 18. As previously noted, the comments allegedly made by Pentrich use "Mr. Jordan", as opposed to Mr. Jordan-El. Doc. Ent. 1-2 ¶ 24. Plaintiff claims that when he sought relief from Gonzales, Pentrich's supervisor, Murdock "notified Defendant Pentrich of the Plaintiff's seeking to complain and notified Defendant Gonzales of the subject-matter of the Plaintiff's verbal complaint[.]" Doc. Ent. 15 at 18. Thereafter, plaintiff claims, "Pentrich knowingly, intentionally, deliberately, understandingly, maliciously and sadistically clos[ed] a cell-room door on the Plaintiff's shoulder almost catching the Plaintiff's arm and Defendant Murdock defac[ed] the cell-room door card whereas it could not be made out how the Plaintiff's name is." Doc. Ent. 15 at 18-19. Here, plaintiff refers *inter alia* to ¶¶ 25-27 of his complaint and ¶ 33 of the affidavit in support of his response. Doc. Ent. 15 at 18-19.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "protects against intentional invidious discrimination by the state against persons similarly situated." *Ciechon v. City of Chicago*, 686 F.2d 511, 522-523 (7th Cir. 1982). "Selective prosecution is permissible as long as it is not based on clearly impermissible grounds such as discrimination on the basis of race, religion, the exercise of first amendment rights, or bad faith." *Ciechon*, 686 F.2d at 523 n.16.

"[T]he government must treat citizens as individuals, and not as members of racial, ethnic, or religious groups." *Missouri v. Jenkins*, 515 U.S. 70, 120-121 (1995) (Thomas, J. concurring). "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' At the same time, . . . cases predicating constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are 'lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608-610 (2d Cir. 1980)) (internal citations omitted).

"To prevail on an equal protection claim based on selective enforcement, plaintiffs must show '(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Saleh v. City of Buffalo*, 80 Fed.Appx. 119, 122 (2d Cir. 2003) (quoting *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir.2001)). *See also Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000).

In the context of an Equal Protection claim, the Sixth Circuit has stated that "because neither prisoners nor indigents are a suspect class and, as explained above, the classification does not implicate a fundamental right, we must uphold the Act's fee requirements if they are

rationally related to a legitimate government interest." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). However, it is clear here that plaintiff is alleging discrimination not on his status as a prisoner but, rather, on his status as a member of the MTSA. An interpretation of plaintiff's complaint as alleging that he was treated differently than non-MTSA members is supported by plaintiff's April 3, 2003 SLF-00715 Step III grievance appeal form, wherein plaintiff stated that "the Unit 5 Housing Team began removing all prisoners' door cards with Cultural / Religious / Islamic Names in which any door card was taken off by staff also contrary to the grievance Resolution Order via RUM Taylor." Doc. Ent. 1-2 at 26. Such a conclusion is also supported by the statement in his response that Pentrich and Murdock "acted in concert removing cell-door identification cards with Islamic legal names[.]" Doc. Ent. 15 at 20 (Substantive Due Process section). Furthermore, plaintiff asserts that "[t]here is no possible justification put forth by the Defendants for the overt adverse action engaged in[.]" Doc. Ent. 15 at 16. Therefore, the Court should deny defendants' motion to dismiss with respect to plaintiff's equal protection claim against Pentrich and Murdock.

**3.     Plaintiff's conspiracy claims under 42 U.S.C. § 1985(3) against Pentrich and Murdock survive defendants' motion to dismiss.**

**a.**      Plaintiff's complaint is based in part upon 42 U.S.C. § 1985. Doc. Ent. 1-2 ¶ 8. Among the allegations in plaintiff's complaint is the assertion that defendants Pentrich and Murdock acted in concert. Doc. Ent. 1-2 ¶¶ 31-32. Furthermore, in his response to the instant motion, plaintiff claims that Murdock acted in concert with Pentrich when Murdock notified Pentrich that plaintiff sought to complain and notified Gonzales of the substance of plaintiff's verbal complaint. Doc. Ent. 15 at 7. Plaintiff's response specifically mentions 42 U.S.C. § 1985(3). Doc. Ent. 15 at 16.

42 U.S.C. § 1985 governs "Conspiracy to interfere with civil rights".  With regard to "depriving persons of rights or privileges", the statute provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  "[C]onclusory allegations are not sufficient to state a claim under 42 U.S.C. §§ 1985(3)[.]"  *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971).  "[W]e are required to accept only well pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts."  *Blackburn*, 443 F.2d at 124 (internal citations omitted).

"[T]o make out a violation of § 1985(3) . . . the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the

United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-829 (1983).[23]

As to the second element, the Supreme Court has stated that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (citing *Hicks v. Resolution Trust Corporation*, 970 F.2d 378, 382 (7th Cir.1992)). *See also Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973) ("§ 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)."); *O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1145 (6th Cir. 1973) ("It is clear from the abovequoted language, however, that the requisite invidiously discriminatory intent must be class-based.").

Treating plaintiff's conspiracy claim as brought pursuant to 42 U.S.C. § 1985(3) and giving him the benefit of the doubt as a pro se plaintiff, *Haines*, 404 U.S. at 520, plaintiff has alleged that the motive for conspiracy was a class based animus. Plaintiff appears to suggest that he was being treated differently on the basis of his membership in the MTSA. *In re Jackson*

---

[23] "[C]laims under § 1985(3), unlike those under 42 U.S.C. § 1983, need not allege that the deprivation occurred at the hands of the state." *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 225 (6th Cir. 1991) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 99 (1971); *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 832 (1983)). *See also O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1144 (6th Cir. 1973).

*Lockdown/MCO Cases*, 568 F.Supp. 869, 883 (E.D. Mich. 1983) (Cohn, J.) (concluding prisoner

stated a § 1983(3) claim where he had not "alleged that MCO's[24] actions were directed against

him simply as a member of the class of prisoners generally but rather 'as a member of a class of

inmates at the SPSM'.")[25] (internal footnote omitted).  Arguably, plaintiff's allegation that

Murdock notified Pentrich and Gonzales, which is set forth in the response to the instant motion,

is an act in furtherance of the conspiracy and which may have resulted in the April 2, 2003

retaliation.

**ii.      42 U.S.C. § 1986 ("Action for neglect to prevent")**

Plaintiff's complaint and plaintiff's response specifically mention 42 U.S.C. § 1986.

Doc. Ent. 1-2 ¶ 8; Doc. Ent. 15 at 17, 19.  Section 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to be
> done, and mentioned in section 1985 of this title, are about to be committed, and
> having power to prevent or aid in preventing the commission of the same,
> neglects or refuses so to do, if such wrongful act be committed, shall be liable to
> the party injured, or his legal representatives, for all damages caused by such
> wrongful act, which such person by reasonable diligence could have prevented;
> and such damages may be recovered in an action on the case; and any number of
> persons guilty of such wrongful neglect or refusal may be joined as defendants in
> the action; and if the death of any party be caused by any such wrongful act and
> neglect, the legal representatives of the deceased shall have such action therefor,
> and may recover not exceeding $5,000 damages therein, for the benefit of the
> widow of the deceased, if there be one, and if there be no widow, then for the
> benefit of the next of kin of the deceased. But no action under the provisions of
> this section shall be sustained which is not commenced within one year after the
> cause of action has accrued.

42 U.S.C. § 1986.  "Section 1986 establishes a cause of action against anyone, who has

knowledge of a conspiracy under § 1985 , and "having power to prevent or aid in preventing the

------

[24]Michigan Corrections Organization

[25]State Prison of Southern Michigan

commission of the same, neglects or refuses so to do." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 -315 (6th Cir. 2005) (quoting 42 U.S.C. § 1986). "[Section] 1986 merely provides for a cause of action for neglecting to prevent any of the wrongs mentioned in § 1985." *Littlejohn v. McCafferty*, 83 Fed.Appx. 705, 707 (6th Cir. 2003) (citing *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir.1992)).[26]

"Section 1986 creates a cause of action for a defendant's knowing failure to prevent a § 1985 conspiracy. Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *White v. Trapp*, 93 Fed.Appx. 23, 26 (6th Cir. 2004). *See also Bass v. Robinson*, 167 F.3d 1041, 1050 n.5 (6th Cir. 1999); *Ellison v. Leffler*, No. 93-2606, 30 F.3d 133, *2 (6th Cir. June 21, 1994); *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990). Although I have previously concluded that plaintiff has stated a 42 U.S.C. § 1983(3) claim upon which relief may be granted, the Court should conclude that plaintiff has failed to state a 42 U.S.C. § 1986 claim to the extent it is based upon Gonzales's alleged failure to supervise or Renico and Caruso's alleged encouragement and approval of Pentrich, Murdock and Gonzales's conduct. Doc. Ent. 1-2 ¶¶ 33-35; Doc. Ent. 15 at 18-19; Doc. Ent. 19 at 17-22.

4.     **The Court should not exercise supplemental jurisdiction over plaintiff's state law claims.**

Plaintiff requests that the Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over his state law claims. Doc. Ent. 1-2 ¶ 10. In pertinent part, Section 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts

---

[26]In *Littlejohn*, the Court concluded that "[t]he complaint failed to state a cause of action under §§ 1985 & 1986, because there is no factual allegation that the defendants engaged in a conspiracy for the purpose of depriving plaintiffs of the equal protection of the laws[.]" *Littlejohn*, 83 Fed.Appx. at 707.

shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Within the "Claims for Relief" section of his complaint, plaintiff alleges a violation of Mich. Comp. Laws § 750.147b ("Ethnic intimidation; violation, penalty; civil action, damages, costs") by each of the five defendants. Doc. Ent. 1-2 ¶¶ 31(e)-35(e). He also seeks declaratory relief that Pendrich, Murdock, Renico and Caruso ratified, authorized, etc., the violation of Mich. Comp. Laws § 750.147b. Doc. Ent. 1-2 ¶ 36(f). Furthermore, he seeks compensation of $2,000 from each defendant under Section 147b(3)(a). Doc. Ent. 1-2 ¶ 38(d). However, this statute is part of the Michigan Penal Code. To the extent that plaintiff seeks a declaration that defendants have violated various criminal statutes, such declaratory relief is barred because plaintiff has no authority to initiate criminal proceedings in his own name. *See Violett v. Pearson*, No. 97-6142, 1998 WL 381640, at *2 (6th Cir. June 23, 1998) (citing *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam)) ("The district court properly dismissed [the civil rights plaintiff's] claims that the defendants engaged in criminal conduct because private citizens have no authority to initiate federal prosecution of the defendants for their alleged unlawful acts."); *Keenan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964) ("Not only are we unaware of any authority for permitting a private individual to initiate a criminal prosecution in his own name . . ., but also to sanction such a procedure would be to provide a means to circumvent the legal safeguards provided for persons accused of crime[.]").

Also within the "Claims for Relief" section, plaintiff alleges a violation of Mich. Comp. Laws § 691.1407 ("Governmental immunity from tort liability") by Gonzales, Renico and

Caruso. Doc. Ent. 1-2 ¶¶ 33(f)-35(f). Specifically, plaintiff cites Subsection 691.1407(2)(c), presumably alleging that defendants have not met the condition that their "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." As the Michigan Court of Appeals has explained, "[g]ross negligence is defined as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Poppen v. Tovey*, 256 Mich. App. 351, 356, 664 N.W.2d 269, 273 (2003) (quoting MICH. COMP. LAWS § 691.1407(2)(c)). Further, "[t]o be the proximate cause of an injury, the gross negligence must be 'the one most immediate, efficient, and direct cause of the injury or damage.'" *Id.* (quoting *Robinson v. City of Detroit*, 462 Mich. 439, 462, 613 N.W.2d 307, 319 (2000)). However, if the Court agrees with my recommendation that plaintiff has not stated § 1983 claims against Gonzales, Renico and Caruso, then it should decline to exercise supplemental jurisdiction over state law claims against them.

Finally, within the "Relief Requested" section of the complaint, plaintiff seeks a declaratory judgment stating that the removal of his door card ordered by Taylor was a violation of MDOC PD 03.01.110. Doc. Ent. 1-2 ¶ 36(b). Plaintiff also seeks a declaratory judgment stating that each of the five defendants participated in violations of Mich. Comp. Laws § 19.142 ("Offenses relating to state property generally; penalties; trespass upon state correctional facility"),[27] the MDOC Employee Handbook and the MDOC PD on employee discipline [02.03.100]. Doc. Ent. 1-2 at 17 ¶¶ 36(f), 36(g). These items are mentioned in what is

---

[27]Section 19.142 mentions "trespass upon a state correctional facility," Subsection 3; annoying, harassing, assaulting or disturbing an inmate, Subsection 1(e); and unlocking or opening an entry to or entering a custodial institution without authority or permission, Subsection 1(f).

essentially the "damages" section of plaintiff's complaint and appear in a paragraph which seeks declaratory relief.

These state law claims are "related" as set forth in 28 U.S.C. § 1367(a). Furthermore, 28 U.S.C. § 1367(c) sets forth circumstances under which the Court should decline to exercise supplemental jurisdiction, and none of these apply to the instant case. Nonetheless, to the extent plaintiff seeks declaratory relief regarding these state law claims, Jordan is currently incarcerated at IBC; because he is no longer incarcerated at SLF, these claims for declaratory relief against Pentrich and Murdock are moot. *See Dellis v. Corrections Corp. of America*, 257 F.3d 508, 510 n.1 (6th Cir. 2001) ("Plaintiff also requested injunctive and declaratory relief in his complaint; however, because he is no longer incarcerated in either Hardeman County Correctional Facility or Whiteville Correctional Facility, these prayers for relief are moot."); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail."); *Abdur-Rahman v. Michigan Department of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995) ("Rahman has been transferred from the State Prison of Southern Michigan in Jackson, Michigan. Therefore, because of Rahman's transfer, his request for injunctive relief is now moot."); *Goar v. Civiletti*, 688 F.2d 27, 29 (6th Cir. 1982) ("the injunctive relief sought is now moot since Goar is no longer imprisoned."); *Tanney v. Boles*, 400 F.Supp.2d 1027, 1039 & n.9 (E.D. Mich. 2005) (Roberts, J.) ("The Sixth Circuit has consistently found that, like a claim for injunctive relief, an inmate's claim for declaratory relief based on prison conditions or treatment becomes moot once the inmate is transferred or released."). *See also Goldsborough v. Carlson*, No. 88-5656, 1988 WL

125368, *1 (6th Cir. Nov. 25, 1988) ("A prisoner's claims for injunctive relief are mooted upon that prisoner's release or transfer.") (citing cases).

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, ALF-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 9/25/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 25, 2008.

s/Eddrey Butts
Case Manager