UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMONE JORDAN,

       Plaintiff,

                              CASE NO. 06-CV-10979-DT
                              JUDGE PAUL D. BORMAN
                              MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

PATRICIA CARUSO,
PAUL H. RENICO,
TODD PENTRICH,
BEVERLY MURDOCK and
NEMUS GONZALES,

       Defendants.

_____/

**SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' RULE 12(b) MOTION TO DISMISS OR ALTERNATIVE RULE 56(b)
MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 13)**

Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    Defendants' First Dispositive Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    Defendants' Second Dispositive Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.    My March 5, 2008 Report and Recommendation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     E.    My September 25, 2008 Supplemental Report and Recommendation . . . . . . . . . . . . . . . . . . 5
     F.    Fed. R. Civ. P. 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     G.    Plaintiff's Claims Concern the Display of His Name on His Door Card. . . . . . . . . . . . . . . . . 9
     H.    Defendants' Second Dispositive Motion Should Be Granted to the Extent It Seeks Summary
           Judgment with Respect to Plaintiff's First Amendment Retaliation and 42 U.S.C. § 1985(3)
           Conspiracy Claims against Pentrich and Murdock but Should Be Denied to the Extent It Seeks
           Summary Judgment with Respect to Plaintiff's Fourteenth Amendment Equal Protection Claims.
          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           1.     First Amendment retaliation claims against Pentrich and Murdock . . . . . . . . . . . . . 15
           2.     Fourteenth Amendment equal protection claims against Pentrich and Murdock . . . . . . 26
           3.     Conspiracy claims under 42 U.S.C. § 1985(3) against Pentrich and Murdock . . . . . . . 34

III.   NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

I.   **RECOMMENDATION:** The Court should grant defendants' June 25, 2007 motion to the extent it seeks summary judgment with respect to plaintiff's First Amendment retaliation and 42 U.S.C. § 1985(3) conspiracy claims against defendants Pentrich and Murdock, but the Court should deny the motion as to plaintiff's Fourteenth Amendment equal protection claims.

II.   **REPORT:**

A.   **Procedural History**

On March 6, 2006, while incarcerated at Chippewa Correctional Facility (URF), plaintiff filed a fee-paid, pro se civil rights complaint. Doc. Ent. 1-2. Defendants are Michigan Department of Corrections (MDOC) Director Patricia Caruso, former St. Louis Correctional Facility (SLF) Warden Paul H. Renico, SLF Sgt. Nemus Gonzales, and SLF RUMs Todd Pentrich and Beverly Murdock. Doc. Ent. 1-2 ¶¶ 2-6, Doc. Ent. 5 at 8.

The facts underlying the complaint stem from plaintiff's March 4, 2003, Step I grievance regarding plaintiff's door card. Doc. Ent. 1-2 ¶¶ 18-30. Generally, plaintiff claims this case is brought pursuant to 42 U.S.C. §§ 1983 ("Civil action for deprivation of rights"),1985 ("Conspiracy to interfere with civil rights"), 1986 ("Action for neglect to prevent") and 1988 ("Proceedings in vindication of civil rights"), as well as 42 U.S.C. § 2000cc-1 42 U.S.C. § 2000cc-1 ("Protection of religious exercise of institutionalized persons"). Doc. Ent. 1-2 ¶ 8. He seeks declaratory, injunctive and monetary relief. Doc. Ent. 1-2 ¶¶ 36-38. The complaint is signed under penalty of perjury. Doc. Ent. 1-2 at 19.[1]

Plaintiff is currently incarcerated at Earnest C. Brooks Correctional Facility (LRF). *See* www.michigan.gov/corrections, "Offender Search."

---

[1]On July 13, 2006, Judge Borman referred this case to me to conduct all pretrial proceedings. Doc. Ent. 6.

## B.      Defendants' First Dispositive Motion

On June 2, 2006, defendants Caruso, Renico, Pentrich, Murdock and Gonzales filed a

motion for dismissal for lack of exhaustion.  Doc. Ent. 5.  They argued that "[t]he plaintiff ha[d]

not demonstrated that he exhausted all available administrative remedies since he failed to

demonstrate that he filed or was prevented from filing grievances against each defendant setting

forth the allegations of mistreatment of wrongdoing forming the basis of the constitutional

claims asserted against each of the defendants."  Doc. Ent. 5 at 11.

On January 26, 2007, I entered a report recommending that the Court deny without

prejudice defendants' motion to dismiss.  Doc. Ent. 10.[2]  On March 7, 2007, Judge Borman

entered an order accepting my report and recommendation and denied without prejudice

---

[2]Plaintiff claims he did not receive notice of this report
and recommendation until he received the Court's March 7, 2007,
order on March 12, 2007.  Doc. Ent. 15 at 29 ¶¶ 13, 14.
Plaintiff claims he discovered his file in this case was missing.
Doc. Ent. 15 at 30 ¶¶ 19, 22 (this report interprets plaintiff's
claims of difficulty accessing his file as justification for
permitting him an extension of time within which to object to my
report and recommendation and not as an independent claim).
     He prepared a letter to the Court, dated March 14, 2007, in
which he sought copies of certain documents in this case;
however, he was not permitted to send it via expedited legal mail
in violation of MDOC PD 05.03.118 ("Prisoner Mail").  Doc. Ent.
15 at 30-31 ¶¶ 23, 24.  Plaintiff claims he did not have an
opportunity to read my report and recommendation until he
received the copies he had requested from the Court - on or about
March 26, 2007.  Doc. Ent. 15 at 31 ¶ 25.
     On or about April 12, 2007, he completed a prisoner kite.
Doc. Ent. 15 at 39.  In a memorandum dated April 16, 2007, he was
informed that there was "no record of legal mail coming in for
[him] during either January or February."  Doc. Ent. 15 at 40.
     In any event, plaintiff registers objections to the report
and recommendation.  Doc. Ent. 15 at 31-32 ¶¶ 26, 27.  Perhaps
this is what plaintiff is referring to as his "motion for relief
from judgment".  *See* Doc. Ent. 15 at 26, 32, 34.

3

defendants' motion to dismiss.  Doc. Ent. 12.  *See Jordan v. Caruso*, No. 06-CV-10979-DT,

2007 WL 748463 (E.D. Mich. Mar. 7, 2007).

**C.      Defendants' Second Dispositive Motion**

On June 25, 2007, defendants Gonzales, Caruso, Renico, Pentrich and Murdock filed a

Rule 12(b) motion to dismiss or alternative Rule 56(b) motion for summary judgment.  Doc. Ent.

13.  They argue that (I) "[t]he complaint fails to state a federal claim[,]" and (II) "[t]he claims are

barred by immunity."  Doc. Ent. 13 at 7-10.

On August 16, 2007, plaintiff filed a response.  Doc. Ent. 15.[3]

**D.      My March 5, 2008 Report and Recommendation**

On March 5, 2008, I entered a report recommending that the Court grant in part and deny

in part defendants' Rule 12(b) motion to dismiss or alternative Rule 56(b) motion for summary

judgment.  Doc. Ent. 19.  Specifically, I recommended that the Court grant the motion to the

extent it sought dismissal of the claims against defendants Gonzales, Renico and Caruso (Section

II.G.2); dismissal of plaintiff's Eighth Amendment claim (Section II.G.4); and dismissal of

plaintiff's RLUIPA claims (Section II.G.3).  My report also stated that defendants' motion did

not seek dismissal of plaintiff's First Amendment, Fourteenth Amendment, conspiracy or state

law claims.  Doc. Ent. 19 at 14.  *See Jordan v. Caruso*, No. 06-CV-10979-DT, 2008

---

[3]Attached to plaintiff's response are (1) a February 22,
2006, kite response memorandum from URF Chaplain Rev. Sandy
Robert Shaw (Doc. Ent. 15 at 35); (2) a copy of MDOC PD 03.01.110
("Prisoner/Parolee Name Changes"), effective 08/31/98 (Doc .Ent.
15 at 36-37); (3) a February 27, 1997, memorandum regarding
plaintiff's name change (Doc. Ent. 15 at 38); (4) an April 12,
2007, prisoner kite (Doc. Ent. 15 at 39); (5) an April 16, 2007,
grievance response (Doc. Ent. 15 at 40); (6) a copy of MDOC PD
03.02.130 ("Prisoner/Parolee Grievances"), effective 01/01/01
(Doc. Ent. 15 at 41-47).

WL 907376 (E.D. Mich. Mar. 5, 2008).

On March 19, 2008, defense counsel filed objections to the report, contending (1) that sovereign immunity did extend to plaintiff's request for declaratory and injunctive relief, Doc. Ent. 20 at 1-2; (2) that the motion to dismiss did seek dismissal of the entire complaint, including plaintiff's First and Fourteenth Amendment claims and his conspiracy claim, Doc. Ent. 20 at 2-4; and (3) "plaintiff bore the burden of pointing to clearly established law that dictates a conclusion that being called 'Mr. Jordan' and the alleged removal or defacement of door card violates his right to freedom of expression; freedom of religious exercises, retaliation, due process, equal protection, and the law governing conspiracy claims[,]" Doc. Ent. 20 at 4-5.

Thereafter, on March 31, 2008, Judge Borman entered an order remanding my report and recommendation for immediate consideration of plaintiff's other constitutional claims.  Doc. Ent. 21.  *See Jordan v. Caruso*, No. 06-CV-10979-DT, 2008 WL 907375 (E.D. Mich. Mar. 31, 2008).

**E.     My September 25, 2008 Supplemental Report and Recommendation**

My September 25, 2008 supplemental report recommended that the Court grant in part and deny in part defendants' motion to dismiss with respect to plaintiff's First Amendment, Fourteenth Amendment, conspiracy and state law claims, on the basis that plaintiff has failed to state claims upon which relief may be granted.  Doc. Ent. 22.

Section II.E of my of my supplemental report interpreted defendants' motion solely as a motion to dismiss pursuant to Fed. R. Civ. P. 12.  Doc. Ent. 22 at 6-7.  Specifically, I noted that, although defendants' June 25, 2007, dispositive motion is alternatively labeled as a motion for summary judgment, defendants have not attached any evidence to their complaint, for example affidavits or prison records.  Doc. Ent. 22 at 7.

I specifically recommended that the Court grant defendants' motion to dismiss with respect to plaintiff's First Amendment free exercise claim (Section II.H.1.b) but deny defendants' motion to dismiss with respect to plaintiff's First Amendment retaliation claims (Sections II.H.1.c and II.H.1.d). Next, I recommended that the Court grant defendants' motion with respect to plaintiff's Fourteenth Amendment substantive due process claims and deny defendants' motion with respect to plaintiff's Fourteenth Amendment equal protection claim (Section II.H.2). Also, I recommended that the Court deny defendants' motion to dismiss with respect to plaintiff's 42 U.S.C. § 1985(3) conspiracy claims against Pentrich and Murdock but grant the motion to dismiss with respect to plaintiff's 42 U.S.C. § 1986 conspiracy claims against Gonzales, Renico and Caruso (Section II.H.3). Finally, I recommended that the Court not exercise supplemental jurisdiction over plaintiff's state law claims (Section II.H.4). *See Jordan v. Caruso*, No. 06-CV-10979-DT, 2008 WL 5085154 (E.D. Mich. Sept. 25, 2008).

On October 6, 2008, defendants filed objections to my supplemental report and recommendation. Doc. Ent. 24. Defendants objected to (1) "[t]reatment of [their] motion as having been brought solely under [Rule 12(b)][,]" (2) "[a]nalysis of First Amendment retaliation claim and the improper shifting [of] the plaintiff's burden to the defendants[,]" (3) "[a]nalysis of equal protection claim[,]" and (4) "[a]nalysis of conspiracy claim."

On November 24, 2008, Judge Borman entered an order remanding my supplemental report and recommendation to me for consideration of (1) defendants' Rule 56(b) motion, (2) whether the de minimis doctrine applies to plaintiff's allegations, and (3) the applicability of Sixth Circuit precedent *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999), regarding religious

name changes curing custody.  Doc. Ent. 26.  *See Jordan v. Caruso*, No. 06-CV-10979-DT, 2008

WL 5085151 (E.D. Mich. Nov. 24, 2008).[4]

**F.      Fed. R. Civ. P. 56(b)**

Judge Borman has remanded my September 25, 2008 supplemental report and

recommendation for consideration of defendants' Fed. R. Civ. P. 56(b) motion.  Rule 56(b)

provides that "[a] party against whom relief is sought may move at any time, with or without

supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(b).

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact
> would have [the] effect of establishing or refuting one of [the] essential elements
> of a cause of action or defense asserted by the parties, and would necessarily
> affect [the] application of appropriate principle[s] of law to the rights and
> obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867,

872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)).  "In evaluating a

motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . .

and assess the proof to determine whether there is a genuine need for trial."  *Gantt v. Wilson*

*Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).

---

[4]On or about May 6, 2009, plaintiff informed the Court of his transfer to LRF and
requested a copy of the docket sheet in this case.  Doc. Ent. 27.  On or about May 18, 2009,
plaintiff allegedly requested that the Court provide him with copies of my July 11, 2008
scheduling order (Doc. Ent. 14) and Judge Borman's November 24, 2008 order remanding my
supplemental report and recommendation (Doc. Ent. 26).  Doc. Ent. 28.

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).  The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue.  Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[5]  "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact."  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (unpublished) (personal knowledge required); *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("[i]n order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations. . . . Conclusory

---

[5]Plaintiff's complaint is verified.  Doc. Ent. 1 at 18-19; 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").  Also, the declaration/affidavit attached to his response is signed pursuant to 28 U.S.C. § 1746.  Doc. Ent. 15 at 34.

assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (unpublished) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a). *Anderson*, 477 U.S. at 250. Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**G.    Plaintiff's Claims Concern the Display of His Name on His Door Card.**

These facts, which were set forth in my earlier reports, are repeated here for ease of reference. Plaintiff became a member of the Moorish Science Temple of America, Inc. (MSTA) in 1991. Doc. Ent. 15 at 26 ¶ 3. MSTA is a recognized religious group authorized to conduct group religious services/activities. MDOC PD 05.03.150 ("Religious Beliefs and Practices of

Prisoners"), Attachment A (effective 09/20/07).  According to plaintiff, "all who join the [MSTA] are required to and must use the tribal name 'El' or 'Bey' [in] conjunction with the slave name . . . and refrain from using only the slave name without 'El' or 'Bey'[.]" Doc. Ent. 15 at 27 ¶ 5.  Plaintiff contends that "'El' is a tribal name which re-connects honoring [his] ancestry divine creed", "signif[ies] discontinuance of clinging to names and principles that delude[] to slavery[,]" and recognizes him as a Moor.  Doc. Ent. 15 at 27-28 ¶ 8. Plaintiff contends that to accept simply "Jordan" is "to accept a state of mind of mental and physical slavery disconnecting [him] from the GREAT SPIRIT . . . and from [his] ancestry[,]" and "to accept clinging to names and principles that delude[] to slavery[.]" Doc. Ent. 15 at 28 ¶ 10.  Being referred to as "merely 'Jordan' is denigrating, dehumanizing, and degrading and thus derogatory[.]" Doc. Ent. 15 at 28 ¶ 11.

On March 26, 1992, plaintiff completed an affidavit informing the MDOC and its agents to refer to plaintiff as Simone Tyrone Jordan-El, in accordance with MDOC PD 03.01.110 ("Prisoner/Parolee Name Changes"").[6]  Doc. Ent. 15 at 27 ¶ 6, 38.  A February 27, 1997, MDOC Memorandum from the Marquette Branch Prison (MBP) Records Office Supervisor acknowledged a computer error that had occurred regarding plaintiff's name change and stated that plaintiff "should be referred to by his legal name of: SIMONE TYRONE JORDAN-EL." Doc. Ent. 15 at 38.

---

[6] "Name changes approved by the Department prior to April 1, 1996 based on a notarized affidavit shall continue to be recognized and documented in the same manner as a court ordered name change until the prisoner or parolee has discharged from the Department's jurisdiction."  MDOC PD 03.10.110 ¶ A, effective 08/31/1998.

Several years later, on March 4, 2003, plaintiff completed a Step I grievance form because "the SLF Unit 5 Housing Team refus[ed] to provide [him] a door card that reflect[ed] [his] name change[.]" Doc. Ent. 1-2 at 9 ¶ 18.  The grievance states:

> This grievance is on Unit 5 Housing Team 7 to 3 shift and 3 to 11 shift for refusing to provide a proper door card in compliance with PD 03.01.110.
>
> On 3/4/2003 when Unit 5 Housing Staff came to put my door card on my door I requested that it reflect my name.  When the green tag sought to comply Unit 5 Black tags informed him that 'we don't recognize that.'  This has been a continual practice since I been at this Facility.
>
> I request that my name reflect in compliance with PD 03.01.110.
>
> Housing Unit Team means from the RUM on down to the green and red tag state employees.

Doc. Ent. 1-2 at 21 (SLF-03-03-00715-17a).

On March 11, 2003, RUM Taylor interviewed plaintiff regarding the grievance, during which plaintiff relied upon MDOC PD 03.01.110.  Doc. Ent. 1-2 ¶¶ 19, 20. The grievance was resolved that day by Taylor "agreeing to issue a directive[.]" Doc. Ent. 1-2 ¶¶ 12, 21.  On March 12, 2003, Taylor responded to the grievance, stating in part: "Unit staff were directed to prepare a new door card which reflects both the commitment name and legal name of prisoner Jordan-El and place it on his assigned cell door.  Prisoner Jordan-El has now indicated that he considers this matter satisfactorily resolved."  On March 13, 2003, Steve Rivard reviewed the grievance.  Doc. Ent. 1-2 at 22.  The SLF Unit 5 Housing Team "prepared a new door card with both the Plaintiff's commitment name and ethnic religious name and placed [it] on [his] assigned cell-door[.]"  Doc. Ent. 1-2 ¶ 22.

On March 31, 2003, Taylor transferred to another MDOC facility.  Plaintiff claims that on April 1, 2003, SLF's Unit 5 Housing Team reopened plaintiff's grievance, as Pentrich

removed the door card which Taylor "had directed be prepared and placed on the Plaintiff's assigned cell-door[.]"  Doc. Ent. 1-2 ¶¶ 13, 23.[7]  Pentrich replaced it with a cell-door card which reflected only plaintiff's commitment name.  Doc. Ent. 15 at 2.  Pentrich allegedly antagonized, taunted, annoyed, intimidated and baited plaintiff with several comments.  Doc. Ent. 1-2 ¶ 24.

That day, plaintiff sought redress from Pentrich's supervisor, Gonzales.  Doc. Ent. 1-2 ¶ 25, Doc. Ent. 15 at 20.  According to plaintiff, Murdock "notified Defendant Pentrich of the Plaintiff's seeking to complain and notified Defendant Gonzales of the subject-matter of the Plaintiff's verbal complaint, and Defendant Gonzales failed to supervise as was done by RUM Taylor[.]" Doc. Ent. 15 at 2.  Gonzales told plaintiff, "Move on; I don't want to talk about it."  Doc. Ent. 1-2 ¶ 25.

Once Pentrich and Murdock, 1st shift officers, left work, plaintiff "removed the cell-door identification card reflecting only the commitment name which Defendant Pentrich had put on [his] cell-door, and [he] requested the SLF [2nd] shift staff to do another cell-door identification card for placement on [his] cell door[.]" Doc. Ent. 15 at 33 ¶ 32.  "[T]he SLF 2nd shift provided another cell-door identification card reflecting both the commitment name and [his] legal name[.]" Doc. Ent. 15 at 33 ¶ 33.

On April 2, 2003, Pentrich "closed the cell door on the Plaintiff['s] shoulder almost catching the Plaintiff's arm[.]" Doc. Ent. 1-2 ¶ 26.  Murdock "came and wrote on the cell-door

---

[7]In his request for relief, plaintiff seeks the issuance of a declaratory judgment stating that Pentrich's and Murdock's insubordination toward Taylor's Step I response was because Taylor is African-American and that the Step III grievance response "authorized and agreed with the insubordination towards RUM Taylor's directive because RUM Taylor is African American[.]" Doc. Ent. 1-2 ¶¶ 36(d), (e).

12

identification card defacing the surname 'El'."  Doc. Ent. 15 at 33 ¶ 33; Doc. Ent. 1-2 ¶ 27.

Plaintiff requested a Step II grievance appeal form based upon Pentrich and Gonzales's conduct.

Doc. Ent. 15 at 2.  The request was received on April 2, 2003.  The SLF Grievance Coordinator

stated that the request was late and directed plaintiff to submit the re-opened grievance to Step

III.  Doc. Ent. 1-2 ¶ 14 & Doc. Ent. 1-2 at 24.

On April 4, 2003 and April 8, 2003,[8] plaintiff submitted two Step III appeals - one as an

appeal of his Step II response and the other as a direct appeal on the bases of racial and/or ethnic

discrimination.[9]  Doc. Ent. 1-2 ¶ 15 & Doc. Ent. 1-2 at 26-28.  Plaintiff's April 4, 2003 Step III

grievance appeal states:

> After resolving this grievance via RUM Taylor, upon RUM Taylor transferring to
> another Department Facility, the Unit 5 Housing Team began removing all
> prisoners' door cards with Cultural/Religious/Islamic Names in which my door
> card was taken off by staff also contrary to the Grievance Resolution Order via
> RUM Taylor.

Doc. Ent. 1-2 at 26.  Plaintiff's Step III grievance was denied on May 28, 2003.  In part, the Step

III response states that the Step II/Step III form "was properly forwarded to Prisoner Affairs",

pursuant to operating procedure.  Doc. Ent. 1-2 ¶ 16 & Doc. Ent. 1-2 at 30.

---

[8] Plaintiff lists certified mail numbers for the April 4,
2003 and April 8, 2003 mailings.  Compl. ¶ 15.

[9] Plaintiff notes that MDOC PD 03.02.130 provides that "[a]
grievant may file a grievance alleging racial or ethnic
discrimination [and/or] staff brutality or corruption directly to
Step III."  MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"),
effective 12/19/2003, ¶ S; effective 04/28/03 ¶ R; effective
11/01/00 ¶ II.  The policy also provides that "[u]pon receipt,
the grievance shall be carefully reviewed to determine whether to
respond directly to the grievance, request an investigation into
the issue raised in the grievance, or return it to the grievant
for filing at Step I."  *Id*.

13

On or about September 17, 2004, plaintiff wrote to the Carson City Correctional Facility (DRF) grievance coordinator.  Plaintiff stated that he was on modified access and requested grievances for three issues, one of which stated in part: "In March 2003 after resolving a grievance concerning my door, SLF officers Pen[t]rich & Murdock conspired to remove my door card, put it back on with 'EL' on my name, then written on, taunted, and hit with a cell door. . . . These repeated acts are a continuing course of conduct violating authorized expression sanctioned and e[n]couraged by [MDOC] Director's Office, Deputy Director of Administrative Programs."  Doc. Ent. 1-2 at 32.  Plaintiff claims he was seeking to grieve Caruso's conduct authorizing and encouraging Pentrich's and Murdock's conduct.  His request was denied.  Doc. Ent. 1 ¶ 17 & Doc. Ent. 1-2 at 32.

**H.     Defendants' Second Dispositive Motion Should Be Granted to the Extent It Seeks Summary Judgment with Respect to Plaintiff's First Amendment Retaliation and 42 U.S.C. § 1985(3) Conspiracy Claims against Pentrich and Murdock but Should Be Denied to the Extent It Seeks Summary Judgment with Respect to Plaintiff's Fourteenth Amendment Equal Protection Claims.**

As noted above, I have previously concluded that plaintiff's claims against Gonzales, Renico and Caruso do not state § 1983 claims (Doc. Ent. 19 at 17-22) and recommended that the Court should grant the motion to dismiss with respect to plaintiff's 42 U.S.C. § 1986 conspiracy claims against Gonzales, Renico and Caruso (Doc. Ent. 22 at 34-35).  Therefore, this report addresses only those claims related to defendants Pentrich and Murdock which I have previously recommended survive defendants' motion to dismiss - plaintiff's First Amendment retaliation claims (Doc. Ent. 22 at 17-22), plaintiff's equal protection claims (Doc. Ent. 22 at 22-31), and plaintiff's conspiracy claims under 42 U.S.C. § 1985(3) (Doc. Ent. 22 at 31-34).

**1.     First Amendment retaliation claims against Pentrich and Murdock**

14

**a.**      The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances."  U. S. Const. amend. I.  Plaintiff's complaint clearly intends to bring First Amendment claims, based upon his rights to freedom of expression, freedom of religious practice and freedom from retaliation for seeking redress of grievances, concerning the Plaintiff's ethnic religious name change.  Doc. Ent. 1-2 ¶¶ 31a, 32a, 33a, 34a and 35a.

With regard to plaintiff's First Amendment retaliation claim, and as plaintiff recognizes in his response brief, "[a] retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

**b.**      There are several possibilities of "protected conduct" alleged in plaintiff's complaint.  To the extent plaintiff alleges a violation of his right to "freedom from retaliation for seeking redress of grievance concerning the Plaintiff's ethnic religious name change[,]" against defendants Pendrich and Murdoch, Doc. Ent. 1-2 ¶¶ 31(a), ¶ 32(a), his retaliation claim may be based upon the protected conduct of filing grievance SLF-03-03-00715-17a regarding the March 4, 2003 incident which was resolved by Taylor on March 11, 2003 (Doc. Ent. 1-2 ¶ 12, Doc. Ent. 1-2 at 20-22); filing the two April 4, 2003 grievances - both sent to Step III - after which a Third Step Grievance Response was made on May 28, 2003 (Doc. Ent. 1-2 ¶¶ 14-16, Doc. Ent. 1-2 at 23-

30); or submitting the September 17, 2004 modified access status grievance request (Doc. Ent. 1-2 ¶ 17; Doc. Ent. 1-2 at 31-32). *See* Doc. Ent. 22 (Section II.H.1.c).[10]

Furthermore, plaintiff's retaliation claim might also be based upon an alleged violation of his First Amendment right against retaliation for engaging in the protected conduct of exercising his religion - i.e., that the protected conduct in which he was engaged is the practice of his MTSA religion. This would be distinct from a claim that defendants have violated his freedom to practice his religion. *See* Doc. Ent. 22 (Section II.H.1.d).

**c.**     However, whatever plaintiff intended to assert as the requisite "protected conduct," the Court must still consider the sufficiency of his asserted adverse action. In his complaint, plaintiff states that Pentrich removed plaintiff's door card (¶ 23), made several comments (¶ 24), and closed the door on plaintiff's shoulder almost catching his arm (¶ 26). Plaintiff also states that Murdock wrote on the cell-door card such that plaintiff's name is illegible (¶ 27). Furthermore, plaintiff alleges that "[f]rom the time RUM Taylor transferred to a different M.D.O.C. Facility until the Plaintiff transferred from SLF correctional Facility the Plaintiff's door card had been removed, damaged, destroyed and defaced by Defendants Pen[t]rich and Murdock even though RUM Taylor had directed otherwise[.]" Doc. Ent. 1-2 at 11 ¶ 28.

Defendants contend that plaintiff's "claims are based on allegations that a correctional officer verbally antagonized, annoyed, intimidated and 'baited' the inmate and almost caught the inmate's arm in a cell door when he closed it; and that two officers removed a name card from a

_____

[10]In his response to the dispositive motion, plaintiff claims he engaged in protected conduct when he formally grieved and verbally complained about non-compliance with MDOC PD 03.01.110, perhaps referring to grievance SLF-03-03-00715-17a. Doc. Ent. 15 at 8-9. I had previously concluded that plaintiff had alleged that he engaged in protected conduct when he verbally complained and formally grieved regarding his cell-door card. Doc. Ent. 22 at 21.

cell door." Doc. Ent. 13 at 4. Defendants claim that none of the federal constitutional and

statutory provisions that plaintiff cites "guarantee that an inmate will not be subjected to verbal

harassment." Doc. Ent. 13 at 8. In support of this statement, defendants recognize that

"[a]llegations of verbal abuse or harassment also are insufficient grounds for relief under §

1983." *Freeman v. Trudell*, 497 F.Supp. 481, 482 (E.D. Mich. 1980) (Gilmore, J.) (citing cases);

Doc. Ent. 13 at 8 n.5. Defendants also recognize that "allegations of harassment and verbal

threats are insufficient to state a civil rights claim under § 1983. Even verbal threats by a

corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights.

Verbal threats and abuse made in retaliation for filing a grievance are likewise not actionable."

*Alder v. Anderson*, No. 06-CV-12612, 2006 WL 1791338 (E.D. Mich. June 27, 2006) (Cohn, J.)

(internal citations omitted). "Plaintiff alleges nothing more than verbal abuse, which quite

clearly does not implicate constitutional concerns." *Davis v. Michigan Department of

Corrections*, 746 F.Supp. 662, 667 (E.D. Mich. 1990) (Zatkoff, J.). Specifically, defendants

point to the portion of plaintiff's claim which asserts that Pendrich made the following

comments:

| | |
|---|---|
| (a) | "Hey Mr. Jordan, are you alright Mr. Jordan?" |
| (b) | "Set up, thats the best idea I heard all day Mr. Jordan." |
| (c) | "Hey, Mr. Jordan I'm going to get you a new name tag." |
| (d) | "Hey Mr. Jordan, you don't want your neighbors to know who you are Mr. Jordan[.]" |
| (e) | "Hey Mr. Jordan, where do you want your name tag." |
| (f) | "Hey Mr. Jordan, I want to put it where you want it Mr. Jordan." |
| (g) | "Hey Mr. Jordan, up or down Mr. Jordan." |
| (h) | "Hey Mr. Jordan, you have a nice day Mr. Jordan." |

Doc. Ent. 1-2 at 10-11 ¶ 24; Doc. Ent. 13 at 8 n.6.

17

Defendants also point out that "[not] every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). *See also DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)) ("while significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimis* use of physical force." "Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights." "Officer Smith's simple act of shoving Mr. DeWalt qualifies as the kind of *de minimis* use of force that does not constitute cruel and unusual punishment."); *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) ("absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*."); *Outlaw v. Newkirk*, 259 F.3d 833, 839, 840 (7th Cir. 2001) ("the minor nature of Outlaw's injuries strongly suggests that the force applied by Mable was *de minimis*." "the minor nature of the injury coupled with the absence of any other indicia of malice on Mable's part would force us to conclude that it does not rise to the level of a constitutional violation."); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) ("*De minimis* applications of force are necessarily excluded from the cruel and unusual punishment inquiry.") (citing *Hudson*).

Plaintiff's only substantive filing since the filing of the instant motion is his combined August 16, 2007 response (Doc. Ent. 15 at 1-24) and declaration/affidavit (Doc. Ent. 15 at 26-34). Therein, plaintiff claims that adverse actions included his door card being removed, destroyed and replaced with a card which excluded plaintiff's religious/ethnic/legal name; verbal comments which disrespected plaintiff's religious/ethnic/legal name; closing a cell-door on plaintiff's shoulder and almost catching plaintiff's arm; and defacing his cell-door card. Plaintiff

claims these things were done to inflict psychological and/or physical harm.  Doc. Ent. 15 at 10-11.

I had previously concluded that plaintiff's First Amendment retaliation claims against Pentrich and Murdock survived defendants' motion to dismiss.  Doc. Ent. 22 at 17-22. Specifically, I noted that even if the verbal threats did not constitute an adverse action, plaintiff had listed a few actions which he alleged were done to him to inflict harm, and defendant does not argue that these actions were so *de minimis* that it deterred "a person of ordinary firmness from exercising his or her [protected] right[.]"  *Thaddeus-X*, 175 F.3d at 398.  Furthermore, I noted that plaintiff had explained the significance of his name change.  Doc. Ent. 15 at 27-28 ¶¶ 5, 8, 10, 11.

With respect to plaintiff's First Amendment retaliation claim, defendants' objections asserted:

> As argued by the Defendants in their dismissal/summary judgment motion, the courts have concluded that prison inmates have no federal constitutional protections against being verbally taunted or harassed (particularly through the usage of his given name); no federally secured rights to a certain handling or treatment of a prison door card; and that a constitutional violation cannot be predicated on an allegation of a *de minimis* use of force. Combining those factors with the Plaintiff's asserted injury, *i.e.* having his chosen religious moniker disrespected, the Court should find, as a matter of law, that the Plaintiff has averred nothing more than a *de minimis* injury.

Doc. Ent. 24 at 4 (referencing Doc. Ent. 13 at 8-9).  It is defendants' position that "Plaintiff has not come forward with sufficient evidence to indicate that the acts alleged herein are capable of deterring an inmate of ordinary firmness from continuing to file prison grievances[.]" Doc. Ent. 24 at 5.

Here, it is appropriate to reiterate that Judge Borman remanded my supplemental report and recommendation for consideration of whether the de minimis doctrine applies to plaintiff's allegations.  Doc. Ent. 26.  This standard is discussed in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).  Within its discussion of adverse action, the Court acknowledged, "[i]t is not necessarily true, however, that every action, no matter how small, is constitutionally cognizable." *Thaddeus-X*, 175 F.3d at 396.  "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Thaddeus-X*, 175 F.3d at 398.  The Court emphasized that "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.  Retaliation against a prisoner is actionable if it is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts."  *Id*. at 398.

Analyzing the adverse action prong of a First Amendment retaliation claim under the Fed. R. Civ. P. 56 standard for summary judgment, the Court should conclude, assuming plaintiff's allegations to be true, that Pentrich's removal of the door card (Doc. Ent. 1-2 at 10 ¶ 23), Pentrich's comments (Doc. Ent. 1-2 at 10 ¶ 24), Murdock's defacement of plaintiff's cell-door card (Doc. Ent. 1-2 at 11 ¶ 27), and Pentrich's and Murdock's removal, damage, destruction and defacement of plaintiff's door card (Doc. Ent. 1-2 at 11 ¶28) are not the type of acts "capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X*, 175 F.3d at 398.

20

On the other hand, there is plaintiff's allegation that Pentrich "closed the cell door on the Plaintiff['s] shoulder almost catching the Plaintiff's arm[.]" Doc. Ent. 1-2 at 11 ¶ 26. Attached to his complaint is a letter to the Step III grievance coordinator which states, in part, "on April 2, 2003, Officer Pendrich intentionally closed the cell door on me hitting my shoulder almost catching my arm[.]" Doc. Ent. 1-2 at 28. In his response, plaintiff claims that the cell-door was closed "on [his] shoulder almost catching the Plaintiff's arm to inflict physical and p[sy]chological harm[.]" Doc. Ent. 15 at 10 ¶ c. Plaintiff also alleges that "the adverse action towards the present Plaintiff INCLUDED ACTUAL PHYSICAL HARM of closing a cell door on the Plaintiff's shoulder almost catching the Plaintiff's arm[.]" Doc. Ent. 15 at 11. In his affidavit, plaintiff claims "[t]hat at the time Defendant Pentrich hit me with the door I was not in any manner protesting and/or resisting going into my cell-room[.]" Doc. Ent. 15 at 33 ¶ 34. He further claims that he "was merely going into [his] cell-room as [he] normally do[es] when returning from either a call-out or the facility dining hall[.]" Doc. Ent. 15 at 33 ¶ 35. He also claims that "[t]here was not any rapid evolving, fluid, and dangerous predicament circumstances occurring at the time [he] was hit by the cell-door control[l]ed by Defendant Pentrich[.]" Doc. Ent. 15 at 33 ¶ 36.

The Sixth Circuit has considered the "de minimis use of force" in several contexts. For example, the Court has stated that "non-physical injuries and the effects of intentional use of force are sufficient to establish a cognizable claim of excessive use of force that is more than de minimis." *Leary v. Livingston County*, 528 F.3d 438, 453 (6th Cir. 2008) (Fourteenth Amendment). Furthermore, the Court has penned, "the RUOs' minimal application of force, together with Lockett's admittedly minor injuries, did not rise to a level that is sufficient to

sustain his Eighth Amendment claim." *Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008).

The Court has also stated that "[a]lthough an injury need not be severe, it must amount to a more

than a de minimus use of force against the prisoner." *Jones Bey v. Johnson*, 248 Fed.Appx. 675,

677 (6th Cir. 2007) (Eighth Amendment) (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)).

     It is defendants' position that plaintiff has only averred a *de minimis* use of force.  Doc.

Ent. 13 at 9; Doc. Ent. 24 at 4.  As defendants point out in their October 6, 2008 objections to my

September 25, 2008 supplemental report and recommendation, "[t]he plaintiff's evidentiary

burden is merely to establish the factual basis for his claim that the retaliatory acts amounted to

more than a de minimis injury." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (Fed. R. Civ.

P. 50(a)(1)).  *See also Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Harbin-Bey

failed to establish that he suffered any adverse action that would satisfy the standard set forth in

*Thaddeus-X*.") (Fed. R. Civ. P. 56); *Sarah v. Thompson*, 109 Fed.Appx. 770, 772 (6th Cir. 2004)

("Sarah failed to meet his burden of establishing that Thompson's actions were sufficiently

severe to deter a person of ordinary firmness from exercising his rights.") (summary judgment).

Doc. Ent. 24 at 3.

     Considering defendants' objections and analyzing plaintiff's First Amendment retaliation

claim under a Rule 56 standard, the Court should agree that "Plaintiff has not come forward with

sufficient evidence to indicate that the acts alleged herein are capable of deterring an inmate of

ordinary firmness from continuing to file prison grievances[.]" Doc. Ent. 24 at 5.  The Court

should conclude the same to the extent plaintiff's First Amendment retaliation claim is based

upon the protected conduct of engaging in his MSTA religion.  To be sure, defendants do not

offer an explanation for the alleged action of the cell door being closed on plaintiff's shoulder

and almost catching his arm, while plaintiff's notarized declaration/affidavit does assert that the incident was unjustified (Doc. Ent. 15 at 33 ¶¶ 33-36).  Nonetheless, plaintiff has not provided the Court with any details about the pain which resulted from this incident.  *Moore v. Holbrook*, 2 F.3d 697, 704 (6th Cir. 1993) (In the context of an Eighth Amendment claim, the Sixth Circuit has stated that "the infliction of pain, not the infliction of injury, gives rise to a constitutional violation.").

**d.**      Plaintiff claims the causation element has been satisfied, based upon the timing of events - his March 4, 2003 request; its denial; his same-day grievance; Taylor's subsequent transfer, followed by Pentrich's removal of the card and comments; Murdock informing Pentrich that plaintiff verbally complained to Gonzales and Murdock informing Gonzales of the subject of plaintiff's verbal complaint; Gonzales's response that he did not want to talk about it; Pentrich later hitting plaintiff with a cell door; and Murdock writing on plaintiff's cell door card.  Doc. Ent. 15 at 11-13.  Plaintiff also claims that causal connection is shown by Taylor and Rivard's Step I response and Pentrich's and Murdock's defiance of that response on the day following Taylor's transfer.  Doc. Ent. 15 at 13.

Plaintiff also claims the causation element is supported by disparate treatment.  Doc. Ent. 15 at 13-14.  Plaintiff claims that there was disparate treatment and that Pentrich and Murdock intentionally or purposefully exhibited an "invidious discriminatory animus where the removal, destruction, and replacement of the cell-door identification card was coupled along together with the repeated derogatory, degrading, dehumanizing, denigrating verbal comments and writing on the cell-door identification card, were all done specifically aimed at excluding the surname 'El' from [his] name which is evidence of intentional discriminatory animus[.]" Doc. Ent. 15 at 13.

23

Plaintiff claims this evidence will be admissible under Fed. R. Civ. P. 404(b) and will show that

the closing of the cell door on his shoulder was deliberate and intended to harm him for

exercising his First Amendment rights.  Doc. Ent. 15 at 14.

I had previously noted plaintiff's argument that the timing of events and disparate

treatment support a causal connection.  Doc. Ent. 22 at 21.  Nonetheless, where plaintiff has not

satisfied his burden of establishing that the actions he is alleging were sufficiently adverse, the

Court need not draw a conclusion as to causal connection.

**e.**   Judge Borman has also remanded my supplemental report and recommendation for

consideration of the applicability of Sixth Circuit precedent *Spies v. Voinovich*, 173 F.3d 398,

406 (6th Cir. 1999).  In *Spies*, plaintiff "was ordained as a Zen Buddhist in December 1994, and

was given the religious name of Gunaratna Sarika."  *Spies*, 173 F.3d at 401.  He challenged the

district court's "determination that various prison policies that allegedly burden his right to free

exercise of religion were reasonably related to legitimate penological interests, pursuant to the

four-part standard in *Turner v. Safley*, 482 U.S. 78 (1987)[,]" as well as the award of summary

judgment to defendants on his retaliation claim.  *Id*.

Among Spies's First Amendment challenges was a claim regarding the use of his

religious name.  *Spies*, 173 F.3d at 406.  Specifically, "Spies claim[ed] that prison officials

violated his First Amendment rights by refusing to use his religious name."  *Id*.  The Court

noted,

> We need not even analyze this claim in light of *Turner*, for it is established in this
> circuit that Spies has no
>
>> constitutional right to dictate how prison officials keep their prison
>> records. As we see this issue, the present question of name change
>> usage relates to prison administration. Absent unusual allegations

> such matters are for state prison officials to resolve. Intervention
> by the federal courts should only be in the very unusual case.
>
> *Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir.1980), *cert.
> denied*, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981).  Moreover, the
> institutional records at the prison have indeed *been changed* to reflect his new
> name.  Spies's claim has no merit.

*Spies*, 173 F.3d at 406.[11]

I conclude that *Spies* is only applicable to the instant case to the extent plaintiff brought a

First Amendment free exercise claim.  *See* Doc. Ent. 22 at 18-19 (Section II.H.1.b).  The analysis

of the constitutionality of a prison regulation under *Turner v. Safley*, 482 U.S. 78 (1987),[12] as

was at issue in *Spies*, and the analysis of a free exercise and/or RLUIPA claims,[13] similar to the

-----

[11]Spies also claimed that "prisoner officials retaliated against him for the filing of his lawsuit."  The Court concluded that "[s]ince the district court never ruled on the merits of Spies's claim, we must remand it to the trial court, which should consider Spies's retaliation claim in light of our recent en banc decision in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)."  *Spies*, 173 F.3d at 407.

[12]"The *Turner* Court reviewed four factors that are relevant in determining the reasonableness of a challenged prison regulation[:]

> 'First there must be a valid, rational connection between the prison regulation and
> the legitimate governmental interest put forward to justify it.' [*Turner*, 482 U.S. at
> 89].  If, not the regulation is unconstitutional, and the other factors do not matter.  *Id.*
> at 89-90[].  Unlike the first factor, the remaining factors are considerations that must
> be balanced together: (2) 'where there are alternative means of exercising the right
> that remain open to prison inmates'; (3) 'the impact that accommodation of the
> asserted constitutional right will have on guards and other inmates, and on the
> allocation of prison resources generally'; and (4) whether there are 'ready
> alternatives' available 'that fully accommodate the prisoner's rights at *de minimis*
> cost to valid penological interests.'  *Id.* at 90-91[.]

*Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994).

[13]*See Massingill v. Livingston*, 277 Fed.Appx. 491, 493 (5th Cir. 2008)("Massingill has failed to establish that any substantial burden placed on the practice of his religion

claims mentioned in Section II.H.1.b of my September 25th report, are distinct from the First

Amendment retaliation analysis under *Thaddeus-X*.  At most, the Court might consider the

"impact" factor in a *Turner* claim or the "substantial burden" factor in a free exercise/RLUIPA

claim as analogous when analyzing the "adverse action" factor of a First Amendment retaliation

claim.

**2.      Fourteenth Amendment equal protection claims against Pentrich and Murdock**

**a.**     Plaintiff brings a Fourteenth Amendment claim against defendants Pentrich and Murdock

based upon plaintiff's right to be free from the egregious abuse of governmental power and his

right to equal protection of the laws.  Doc. Ent. 1-2 ¶¶ 31(d)-32(d).

        "The Equal Protection Clause commands that no State shall 'deny to any person within

its jurisdiction the equal protection of the laws.'"  *Vacco v. Quill*, 521 U.S. 793 (1997).  "To

prevail on an equal protection claim based on selective [treatment], plaintiffs must show '(1) that

they were treated differently from other similarly situated individuals, and (2) that such

differential treatment was based on impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person.'"  *Saleh v. City of Buffalo*, 80 Fed.Appx. 119, 122 (2d Cir. 2003) (quoting Harlen Assocs.

---

outweighed the substantial interests of prison officials in
safety, prisoner identification, and hygiene."); *Koger v. Bryan*,
523 F.3d 789, 796 (7th Cir. 2008) ("RLUIPA prohibits prisons
receiving federal funds from imposing a substantial burden on an
inmate's religious exercise unless prison officials can
demonstrate 'that imposition of the burden on that person (1) is
in furtherance of a compelling governmental interest; and (2) is
the least restrictive means of furthering that compelling
governmental interest.' 42 U.S.C. § 2000cc-1(a)(1)-(2). Unlike
cases arising under the Free Exercise Clause of the First
Amendment, this prohibition applies even where the burden on the
prisoner 'results from a rule of general applicability.' 42
U.S.C. § 2000cc-1(a)[.]") (internal footnote omitted).

v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir.2001)).  *See also Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000).  "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'  At the same time, . . . cases predicating constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are 'lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608-610 (2d Cir. 1980)) (internal citations omitted).

"In considering whether state [action] violates the Equal Protection Clause of the Fourteenth Amendment, U.S. Const., Amdt. 14, § 1, we apply different levels of scrutiny to different types of classifications.  At a minimum, a . . . classification must be rationally related to a legitimate governmental purpose.  Classifications based on race or national origin and classifications affecting fundamental rights are given the most exacting scrutiny.  Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy." *Clark v. Jeter*, 486 U.S. 456, 460-461 (1988) (internal and external citations omitted).

**b.**     As an initial matter, I comment on the appropriate analysis of the term "similarly situated."  The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne*

*Living Center*, 473 U.S. 432, 439 (1985).  The Equal Protection Clause "protects against intentional invidious discrimination by the state against persons similarly situated."  *Ciechon v. City of Chicago*, 686 F.2d 511, 522-523 (7th Cir. 1982).

In their objections to my September 25, 2008 report, defendants contend that "Plaintiff's complaint averments do [not] set forth facts tending to show that the defendants treated him differently from other similarly situated inmates *with religious and/or cultural names*[.]" Doc. Ent. 24 at 6 (emphasis added).  *See Spencer v. Cain*, No. 98-30645, 1999 WL 499768, 1 (5th Cir. June 16, 1999) ("Spencer argues on appeal that he was denied equal protection when the defendants refused to issue him an identification card reflecting his religious name as his legal name, as was previously done for other similarly situated Muslim inmates."); *Ghashiyah v. Frank*, No. 07-C-308-C, 2007 WL 5517455, 5 (W.D. Wis. Aug. 1, 2007) ("alleging that defendants Kondoz, Frank, Schneiter and Beerkircher are allowing other similarly situated prisoners to use their religious names on their grievances.").

However, "the appropriate comparison is between those persons subject to the classification and those persons who are similarly situated but for the classification." *Maldonado v. Houstoun*, 157 F.3d 179, 187 (3d Cir. 1998).  *See also United States v. Armstrong*, 517 U.S. 456, 465 (1996) (with regard to a selective-prosecution claim, "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a *different race* were not prosecuted.") (emphasis added); *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) ("In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated *but for the illegitimate classification used by the government actor* was treated differently.") (emphasis added).

Thus, even if plaintiff's complaint, as defendants object, does not aver that defendants "discriminated against him because he is a member of MSTA," Doc. Ent. 24 at 5, the proper analysis would be whether plaintiff's claims allege he was treated differently from similarly situated inmates *without* religious and/or cultural and/or Islamic names.

**c.**     In my supplemental report and recommendation, I concluded that the Court should deny defendants' motion to dismiss with respect to plaintiff's equal protection claim against Pentrich and Murdock.  Doc. Ent. 22 at 28-31 (Section II.H.2.d).  Specifically, I noted the following: In the context of an Equal Protection claim, the Sixth Circuit has stated that "because neither prisoners nor indigents are a suspect class and, as explained above, the classification does not implicate a fundamental right, we must uphold the Act's fee requirements if they are rationally related to a legitimate government interest." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  However, it is clear that plaintiff is alleging discrimination not on his status as a prisoner but, rather, on his status as a member of the MTSA.  An interpretation of plaintiff's complaint as alleging that he was treated differently than non-MTSA members is supported by plaintiff's April 3, 2003 SLF-00715 Step III grievance appeal form, wherein plaintiff stated that "the Unit 5 Housing Team began removing all prisoners' door cards with Cultural / Religious / Islamic Names in which any door card was taken off by staff also contrary to the grievance Resolution Order via RUM Taylor."  Doc. Ent. 1-2 at 26.  Such a conclusion is also supported by the statement in his response that Pentrich and Murdock "acted in concert removing cell-door identification cards with Islamic legal names[.]"  Doc. Ent. 15 at 20 (Substantive Due Process section).  Furthermore, plaintiff asserts that "[t]here is no possible justification put forth by the Defendants for the overt adverse action engaged in[.]" Doc. Ent. 15 at 16.  Therefore, I

29

recommended that the Court deny defendants' motion to dismiss with respect to plaintiff's equal protection claim against Pentrich and Murdock.  Doc. Ent. 22 at 30-31.

**d.**     Defendants have objected to my analysis of plaintiff's equal protection claim.  Doc. Ent. 24 at 5-6.  Specifically, they state that "nowhere in the Plaintiff's civil rights complaint does he aver that the defendants discriminated against him because he is a member of MSTA."  Doc. Ent. 24 at 5.  In support of this statement, defendants refer to ¶ 31 of the complaint and the Step III grievance appeal.  Doc. Ent. 24 at 5-6; Doc. Ent. 1-2 at 12 ¶ 31; Doc. Ent. 1-2 at 26.

Plaintiff's complaint alleges that Pentrich and Murdock "were motivated by the Plaintiff's ethnic religious name change and Plaintiff's having sought redress concerning the Plaintiff's ethnic religious name change[.]" Doc. Ent. 1-2 at 12-13 ¶¶ 31-32.  Also, plaintiff's Step III grievance stated that "the Unit 5 Housing Team began removing *all* prisoners' door cards with Cultural/Religious/Islamic Names[.]" Doc. Ent. 1-2 at 26 (emphasis added).

With respect to his claims based upon 42 U.S.C. §§ 1985, 1986, and his Equal Protection claim, plaintiff mentions a discriminatory animus.  Doc. Ent. 15 at 14-19.[14]  Specifically, plaintiff claims that Pentrich's and Murdock's overt adverse acts were in defiance of MDOC PD 03.01.110 and RUM Taylor's resolution of the matter and the "defiant conduct was clearly based on intentional or purposeful invidious discriminatory animus where the removal, destruction, and replacement of the cell-door identification card was coupled along together with the repeated derogatory, degrading, dehumanizing, denigrating verbal comments and writing on the Plaintiff's cell-door identification card[.]"  Plaintiff contends that "all were done specifically aimed at excluding the surname 'El' from the plaintiff's name which is evidence of intentional

_____

[14]Also, within his discussion of retaliation, he mentions disparate treatment.  Doc. Ent. 15 at 13-14.

30

discriminatory animus[.]" Doc. Ent. 15 at 15.  Plaintiff also claims that what happened to his

cell-door card and the verbal comments are evidence "that closing of the cell-door on the

Plaintiff's shoulder was not a mistake, but was deliberate, malicious, and callous intended to

harm the Plaintiff for engaging in the exercise of First Amendment Rights[.]" Doc. Ent. 15 at 15-

16.  Citing ¶ 36(d) of his complaint, which alleges that Pentrich's and Murdock's

"insubordination towards the new door card directed by RUM Taylor . . . was because RUM

Taylor is African American i.e. Black[,]" plaintiff wonders why Pentrich and Murdock were

laying "in wait until after RUM Taylor transferred to commit the Plaintiff's cited overt adverse

action?"  Doc. Ent. 15 at 16.

Plaintiff notes that, the day after Taylor was transferred from SLF, Pentrich removed his

cell-door identification card which listed both his commitment name and his legal name and

replaced it with a card reflecting only plaintiff's commitment name, while making statements

"specifically aimed at excluding the plaintiff's surname 'El'[.]"  In support of this assertion,

plaintiff refers to ¶¶ 23 and 24 of his complaint.  Doc. Ent. 15 at 18.  As previously noted, the

comments allegedly made by Pentrich use "Mr. Jordan", as opposed to Mr. Jordan-El.  Doc. Ent.

1-2 ¶ 24.  Plaintiff claims that when he sought relief from Gonzales, Pentrich's supervisor,

Murdock "notified Defendant Pentrich of the Plaintiff's seeking to complain and notified

Defendant Gonzales of the subject-matter of the Plaintiff's verbal complaint[.]" Doc. Ent. 15 at

18.  Thereafter, plaintiff claims, "Pentrich knowingly, intentionally, deliberately,

understandingly, maliciously and sadistically clos[ed] a cell-room door on the Plaintiff's

shoulder almost catching the Plaintiff's arm and Defendant Murdock defac[ed] the cell-room

door card whereas it could not be made out how the Plaintiff's name is."  Doc. Ent. 15 at 18-19.

Here, plaintiff refers *inter alia* to ¶¶ 25-27 of his complaint (Doc. Ent. 1-2 at 11) and ¶ 33 of the affidavit in support of his response (Doc. Ent. 15 at 33).  Doc. Ent. 15 at 18-19.

**e.**      Using the appropriate comparison and under the standard for Fed. R. Civ. P. 56, the Court should deny defendants' motion for summary judgment as to plaintiff's equal protection claims.  To be sure, if plaintiff asserts that he was treated differently than a prisoner without a religious/cultural/Islamic name, discrimination against a person with a religious/cultural/ethnic name is not the same as an allegation that he was discriminated against on the basis of his religion, ethnicity or national origin.

Of the aforementioned levels of scrutiny, the Court should apply the rational basis test to plaintiff's remaining Equal Protection Clause claims.  "[T]he government must treat citizens as individuals, and not as members of racial, ethnic, or religious groups."  *Missouri v. Jenkins*, 515 U.S. 70, 120-121 (1995) (Thomas, J. concurring).  If plaintiff's Equal Protection claim is based on an asserted **suspect class of all religions**, i.e., he is being treated differently than a non-religious prisoner, "strict scrutiny has been reserved for laws that 'discriminat[e] among religions.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (citing *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 339 (1987) ("*Larson* [*v. Valente*, 456 U.S. 228 (1982)] indicates that laws discriminating *among* religions are subject to strict scrutiny, . . . and that laws 'affording a uniform benefit to *all* religions' should be analyzed under *Lemon* [*v. Kurtzman*, 403 U.S. 602 (1971)].").

Furthermore, "[t]he free exercise of religion is a fundamental constitutional right." *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974).  If plaintiff's Equal Protection claim is based on an asserted **"fundamental right to free exercise of religion[,]"** i.e., plaintiff was treated

differently that a prisoner of another religion or a non-Islamic prisoner, the First Circuit has

stated that "[w]here a plaintiff's First Amendment Free Exercise claim has failed, the Supreme

Court has applied only rational basis scrutiny in its subsequent review of an equal protection

fundamental right to religious free exercise claim based on the same facts." *Wirzburger v.*

*Galvin*, 412 F.3d 271, 282 (1st Cir. 2005) (citing *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)

(citing *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1985))). *See also*; *St. John's United Church*

*of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007).

It is true that "[c]onclusory allegations by themselves do not establish an equal protection

violation without proof of invidious discriminatory intent." *Mullins v. Arms*, No. 95-5888, 1996

WL 219123, 1 (6th Cir. Apr. 30, 1996). *See also Moore v. City of Muskegon*, No. 94-1077, 1994

WL 328297, 1 (6th Cir. July 6, 1994) ("Moore's equal protection claim was also properly

dismissed as conclusory."); *Kinder by Kinder v. Sandberg*, No. 89-3933, 1990 WL 106794, 1 (6th

Cir. July 30, 1990) (concluding district court properly granted summary judgment where

"plaintiffs' equal protection claim contained broad and conclusory language, devoid of the

factual allegations necessary to support an instance of age, sex, or single-parent based

discrimination.").

However, plaintiff's allegations are more than conclusory. Citing *Cleburne*, defendants

contend that "Plaintiff has produced no evidence demonstrating that all inmates with

cultural/religious/Islamic names are MSTA members; or that all are African American. Thus,

Plaintiff failed to aver facts tending to show he was discriminated against on the basis of his

membership in MSTA or on the basis of his race; and he has proffered no affirmative evidence

demonstrating such facts." Doc. Ent. 24 at 6.

33

In fact, plaintiff's response notes that "all who join the [MSTA] are required to and must use the tribal name 'El' or 'Bey' [in] conjunction with the slave name . . . and refrain from using only the slave name without 'El' or 'Bey'[.]" Doc. Ent. 15 at 27 ¶ 5.  Plaintiff also contends that 'El' recognizes him as Moor.  Doc. Ent. 15 at 27-28 ¶ 8.  Plaintiff further claims that actions were done "specifically aimed at excluding the surname 'El'[.]" Doc. Ent. 15 at 15.  Also, as plaintiff seems to suggest, defendants have not put forth any justification for the alleged overt actions.  Doc. Env. 15 at 16.

Therefore, whether plaintiff's Equal Protection claim is based upon an asserted fundamental right to free religious exercise or an asserted suspect class of religious persons, defendants have not shown "an absence of evidence to support the non-moving party's case[,]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Assuming plaintiff's allegations to be true, and without an explanation from defendants regarding their actions, the Court should not conclude that defendants' actions were "rationally related to a legitimate governmental purpose." *Clark*, 486 U.S. at 461.

**3.      Conspiracy claims under 42 U.S.C. § 1985(3) against Pentrich and Murdock**

Plaintiff's complaint is based in part upon 42 U.S.C. § 1985.  Doc. Ent. 1-2 ¶ 8.  Among the allegations in plaintiff's complaint is the assertion that defendants Pentrich and Murdock acted in concert.  Doc. Ent. 1-2 ¶¶ 31-32.  Furthermore, in his response to the instant motion, plaintiff claims that Murdock acted in concert with Pentrich when Murdock notified Pentrich that plaintiff sought to complain and notified Gonzales of the substance of plaintiff's verbal complaint.  Doc. Ent. 15 at 7.  Plaintiff's response specifically mentions 42 U.S.C. § 1985(3). Doc. Ent. 15 at 16.

34

42 U.S.C. § 1985 governs "Conspiracy to interfere with civil rights".  With regard to "depriving persons of rights or privileges", the statute provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  "[C]onclusory allegations are not sufficient to state a claim under 42 U.S.C. §§ 1985(3)[.]"  *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971).  "[W]e are required to accept only well pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts."  *Blackburn*, 443 F.2d at 124 (internal citations omitted).

"[T]o make out a violation of § 1985(3) . . . the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the

United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-829 (1983).[15]

As to the second element, the Supreme Court has stated that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (citing *Hicks v. Resolution Trust Corporation*, 970 F.2d 378, 382 (7th Cir.1992)). *See also Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973) ("§ 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)."); *O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1145 (6th Cir. 1973) ("It is clear from the abovequoted language, however, that the requisite invidiously discriminatory intent must be class-based.").

In my September 25, 2008 report, which treated defendants' dispositive motion as a motion to dismiss, I recommended that, treating plaintiff's conspiracy claim as brought pursuant to 42 U.S.C. § 1985(3) and giving him the benefit of the doubt as a pro se plaintiff, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), plaintiff had alleged that the motive for conspiracy was a

---

[15] "[C]laims under § 1985(3), unlike those under 42 U.S.C. § 1983, need not allege that the deprivation occurred at the hands of the state." *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 225 (6th Cir. 1991) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 99 (1971); *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 832 (1983)). *See also O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1144 (6th Cir. 1973).

class based animus. I based this conclusion on plaintiff's apparent suggestion that he was being treated differently on the basis of his membership in the MTSA. *In re Jackson Lockdown/MCO Cases*, 568 F.Supp. 869, 883 (E.D. Mich. 1983) (Cohn, J.) (concluding prisoner stated a § 1983(3) claim where he had not "alleged that MCO's[16] actions were directed against him simply as a member of the class of prisoners generally but rather 'as a member of a class of inmates at the SPSM'.")[17] (internal footnote omitted). I further noted that, arguably, plaintiff's allegation that Murdock notified Pentrich and Gonzales, which was set forth in the response to the instant motion, was an act in furtherance of the conspiracy and which may have resulted in the April 2, 2003 retaliation.

Defendants have objected to my analysis of the conspiracy claim. Doc. Ent. 24 at 6-8. With respect to the second element of a Section 1985(3) claim, defendants claim that "[p]laintiff never mentioned in his civil rights Complaint that his membership in MSTA was the basis for the Defendants' alleged actions[,]" and that *In re Jackson Lockdown/MCO Cases* is inapplicable to plaintiff's conspiracy claim. Doc. Ent. 24 at 7. As to the third element, defendants claim that my reliance on plaintiff's assertion that "Murdock notified Pentrich and Gonzales" relieves plaintiff of "his burden to come forward with affirmative evidence showing the existence of a conspiracy to deprive Plaintiff of the equal protection of the laws." Doc. Ent. 24 at 7. Finally, as to the fourth element, defendants claim that plaintiff "has not made the requisite showing of injury or the deprivation of a right or privilege as required for a claim under [Section 1985(3)]." Doc. Ent. 24 at 8.

---

[16]Michigan Corrections Organization

[17]State Prison of Southern Michigan

Plaintiff's only substantive filings are the complaint, wherein he claims that Pentrich and Murdock acted "in concert" (Doc. Ent. 1-2 at ¶¶ 31-32), and the response to defendants' motion, wherein plaintiff claims that Murdock notified Pentrich that plaintiff sought to complain to Gonzales (Doc. Ent. 15 at 7, 18). These are conclusory allegations which are insufficient to survive defendants' motion for summary judgment on plaintiff's Section 1985(3) claim. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) ("Plaintiffs here do not allege that Defendants acted with discriminatory animus based on a constitutionally protected classification. Additionally, Plaintiffs' complaint does not set forth specific allegations supporting their conspiracy claim, but rather vaguely asserts that Defendants 'conspired.' Consequently, we affirm the district court's grant of summary judgment on Plaintiffs' § 1985(3) conspiracy claim.") (internal citation omitted); *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971) ("There are no facts alleged in support of the conclusions, and we are required to accept only well pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts.") (internal citations omitted).

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a

38

party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th

Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir.

1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall not be more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 06/11/09

<table>
<tr><td>The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means and Simone Jordan at E.C. Brooks Correctional or U.S. Mail on June 11, 2009.<br><br>                    s/Eddrey Butts</td></tr>
</table>