UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMONE JORDAN,

        Plaintiff,

v.

        CASE 06-CV-10979
        JUDGE PAUL D. BORMAN
        MAGISTRATE JUDGE PAUL KOMIVES

PATRICIA CARUSO et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT PENTRICH AND MURDOCK'S NOVEMBER 6, 2009 MOTION FOR SUMMARY JUDGMENT
### (Doc. Ent. 38)

**I.**    **RECOMMENDATION:** The Court should grant the motion for summary judgment (Doc. Ent. 38) which has been filed by defendants Todd Pentrich and Beverly Murdock.

**II.**    **REPORT:**

A.    *Procedural Background*

1.    On September 14, 2009 this Court issued an opinion and order dismissing (a) all claims against defendants Gonzales, Renico and Caruso, (b) plaintiff's state law claims, (c) plaintiff's conspiracy claims, (d) plaintiff's First Amendment claims, (e) plaintiff's claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), (f) plaintiff's Eighth Amendment claims and (g) plaintiff's Fourteenth Amendment due process claims. Doc. Ent. 35.

    The Court's opinion and order allowed plaintiff's Fourteenth Amendment equal protection claims to proceed against defendants Pentrich and Murdock only.

2.    The opinion and order noted that plaintiff Jordan was a member of the Moorish Science

Temple of America, Inc., a recognized religion requiring that all who join it use the "tribal" name "El" or "Bey" as a prefix to the supposedly "slave" name (i.e. Jordan). Jordan claimed, according to the Court's opinion, that defendants violated his constitutional and statutory rights when they refused to recognize him by his religious name and in particular when they allegedly removed the name card reflecting his religious name from his cell door and replaced it with a name card reflecting only his commitment name.

3.      In concluding that the Fourteenth Amendment's equal protection claim against Pentrich and Murdock should be allowed to proceed, the Court noted that, while the defendants' motion then before the Court sought dismissal or summary judgment with respect to all of Jordan's claims, "defendants did not so much as mention Jordan's equal protection claims in their motion." Accordingly, because "the equal protection issue has never been briefed" the Court denied the motion with respect to this claim "without prejudice to their ability to file an appropriate motion in which the claims are addressed."

4.      On November 9, 2009, a motion for summary judgment was filed on behalf of defendants Todd Pentrich and Beverly Murdock. Doc. Ent. 38. The motion asserts two grounds for granting judgment in favor of these defendants. First, argues defense counsel, plaintiff did not properly exhaust these claims against these two defendants. Secondly, if the Court should conclude that the alleged failure to exhaust does not merit judgment in their favor, the Fourteenth Amendment does not provide a basis for a cause of action in a case involving a prison door card when the plaintiff contends that all prisoners' door cards with "Cultural/Religious/Islamic" names were removed by the Unit 5 Housing Team.

5.      On March 4, 2010, plaintiff filed a response to defendants' motion. Doc. Ent. 43. With

2

regard to the exhaustion issue, plaintiff argued that defendants "abandoned and forfeited their affirmative defense [of] lack of proper exhaustion by their participation in the litigation of the merits of the claims which the Defendants now seek relief for without actively contesting proper exhaustion." Noting that the defendants were now pleading that no direct Step III appeal was submitted on the proper form to operate as "proper exhaustion" of the claims to be received and processed by MDOC's Prisoner Affairs Section, plaintiff contends that defendants should not be granted relief, because he did not use the exact names of defendants Pentrich and Murdock but instead used the word "staff." Doc. Ent. 43 at 2.

6.  With regard to the second ground set forth in the defense motion, plaintiff refers to his verified complaint in which he alleged that defendants had violated his right to equal protection "by removing [his] door-card, hitting [him] with the cell door and [defacing his] door-card motivated by his national origin ethnic race, his grievance filing about the door-card and his religious practice." Doc. Ent. 43 at 2. Plaintiff also contends that the Prison Litigation Reform Act does not preclude him from recovering out of pocket expenses as well as nominal or punitive damages. Doc. Ent. 43 at 2, 8.

B.  *Legal Standard*

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ("Motion for Summary Judgment or Partial Summary Judgment."). As the Sixth Circuit has noted:

> A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of

3

>a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867, 872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979))). "In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, [quoting former Fed. R. Civ. P. 56(e)], a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[1] "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge,

---

[1] Plaintiff's March 6, 2006 complaint was signed under penalty of perjury. Doc. Ent. 1-2 at 18-19.

set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (personal knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a). *Anderson*, 477 U.S. at 250. Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

C.   *Analysis*

1.   The exhaustion ground asserted by defendants in support of their motion for summary judgment involves MDOC Grievance SLF 03-03-00715-17A (Doc. Ent. 38-3). Defense counsel acknowledges that plaintiff initially and properly exhausted this March 4, 2003 grievance, which

alleged that the Unit 5 Housing Team refused to give him a door card that reflected his legally-changed name. Doc. Ent. 38 at 9. As reflected on page 2 of exhibit A (Doc. Ent. 38-3 at 4), the issue was resolved at this time to plaintiff's satisfaction following a grievance interview, when the Housing Unit Team were told to prepare a door card reflecting plaintiff's commitment as well as his legally-changed name. Plaintiff claims that this grievance was "re-opened" on or about March 31, 2003 when the Unit 5 Housing Unit Team removed this new door card. Doc. Ent. 1-2 at 7-8 ¶ 13. Because the time had elapsed to request a Step II grievance appeal form, plaintiff was told to proceed to the Step III grievance appeal. However, contends defense counsel, plaintiff did not actually appeal the Step I response but instead raised a new issue: that the Unit 5 Housing Unit Team began removing all prisoners' door cards with Cultural/Religious/Islamic Names, and that his own door card was taken off by "staff." Doc. Ent. 38 at 9-10.

2.      Defendants acknowledge that plaintiff claims to have mailed a "Direct Step III" grievance to the MDOC Director's Office along with his Step III appeal on SLF 03-03-00715-17A. However, notes defense counsel, the purported Step III grievance, a copy of which was attached to plaintiff's complaint, is undated and bears no indicia of mailing by plaintiff and/or receipt by prison officials. Defense counsel acknowledges that the grievance mentioned above (Grievance SLF 03-03-00715-17A) was received at Step III by the Prisoner Affairs' Section on April 10, 2003, but contends that no direct Step III grievance was received and processed by MDOC's Prisoner Affairs Section. Doc. Ent. 38 at 10.

3.      Defense counsel notes that "it is not surprising" that plaintiff's alleged Step III letter-form grievance is not reflected as a processed grievance in the MDOC records because a "letter is not the proper procedure for submission of a grievance. While the MDOC grievance policy does authorize

6

the filing of a grievance involving certain allegations, such as racial or ethnic discrimination, directly to Step III of the process, "all grievances must be submitted on the approved grievance form" and therefore the letter plaintiff claims was a direct Step III grievance, in the view of defense counsel "operated to exhaust no claims in this case." Doc. Ent. 38 at 10.

4. Defense counsel points to the fact that plaintiff's grievance history reflects a total of eleven grievances completed through Step III filed regarding conditions or occurrences at SLF between March 4 and April 9, 2003. With the exception of the one grievance referred to above, none involved any issue regarding his prison door card. Doc. Ent. 38 at 11.

5. Accordingly, defense counsel argues, plaintiff properly exhausted his administrative remedies only with respect to a claim that the Unit 5 Housing Unit Team refused to give him a proper door card on March 4, 2003, a grievance regarding which plaintiff received a satisfactory resolution, *i.e.* a direction to Unit 5 Housing Team to place a new door card on plaintiff's cell door setting forth both his commitment and legally-changed names. Defense counsel also acknowledges that plaintiff exhausted his administrative remedies with regard to a claim that on some unknown date the Unit 5 Housing Unit Team began removing all prisoners' door cards with Cultural/Religious/Islamic names and that as part of this removal plaintiff's door card "was taken off by staff." Doc. Ent. 38 at 11.

6. Defense counsel acknowledges that in 2007 the Supreme Court held that when a prison grievance policy contains no "naming requirement" an inmate is not required to identify specific individuals in his grievance. *Jones v. Bock,* 549 U.S.199, 217 (2007). In *Bock*, however, the Court also referred approvingly to its prior decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), in which the Court had upheld the exhaustion requirement contained in the PLRA and left it "to the court below

7

in the first instance to determine the sufficiency of the exhaustion in these cases." *Bock*, 549 U.S. at 219.

7.      Defense counsel contends, correctly in my view, that plaintiff Jordan failed to give prison officials notice of a claim that defendant Murdock had defaced his door card by writing on it, or that the two defendants had "removed, damaged, destroyed and defaced" his door card "from the time RUM Taylor transferred to a different MDOC Facility until the plaintiff transferred from SLF Correctional Facility." Doc. Ent. 38 at 13. The defense argument then concludes by noting that while plaintiff did not have to, at this time, necessarily name the individuals involved in his grievance, he did have to provide specific information on the issue being grieved. In this case, plaintiff's grievance (SLF 03-03-00715-17A) "re[v]olved around one issue; the entire Housing Unit 5 Team's initial refusal to provide him with a proper door card and thereafter, the Housing Unit Team's removal of all prisoner door cards with 'Cultural/Religious/Islamic names.[']" Doc. Ent. 38 at 13; Doc. Ent. 38-3 (Step I & Step III). In conclusion, asserts defense counsel, plaintiff did not "exhaust claims based on specific incidents of alleged misconduct by defendants Murdock and Pentrich." Doc. Ent. 38 at 13. I agree and suggest that at most the grievance allegedly involving these two defendants should be construed only to complain about their taking part in the general removal of all prisoner cards by the staff of Housing Unit 5.

8.      Plaintiff's argument that defendants have waived their right to argue exhaustion as a basis for dismissal at this stage of the case should be rejected by the Court. Plaintiff's complaint was filed on March 6, 2006. Doc. Ent. 1. The very first responsive pleading filed by defense counsel on behalf of her clients was a motion for dismissal for lack of exhaustion, filed on June 2, 2006. Doc. Ent. 5. I filed a report recommending denial of this motion on January 26, 2007 on the ground that

8

failure to exhaust was an affirmative defense more properly raised in a motion for summary judgment, citing the January 22, 2007 decision of the Supreme Court in *Jones*. Doc. Entries 10 and 11. On March 7, 2007 the Court accepted my report and recommendation and denied the motion to dismiss without prejudice. Doc. Ent. 12.

9.	The Court should conclude that plaintiff (a) did not possess any constitutional right to insist that his prison door card reflect his legally-changed (*i.e.*, religious) name as well as his commitment name and (b) that he was not treated any differently from similarly situated prisoners with "cultural/religious/Islamic names."

(a)	In 1982, the Fourth Circuit upheld a ruling by a district judge that a Virginia statute withholding legal recognition of religious names adopted by incarcerated persons violated the First Amendment. *Barrett v. Commonwealth of Virginia,* 689 F.2d 498 (4th Cir.1982). However, the Court of Appeals reversed the order of the District Court prescribing the manner in which the State was to reorganize its correctional records because how "prison officials choose to organize their records is quintessentially an administrative matter in which the courts should not intervene." *Barrett*, 689 F.2d at 503. The Court reached this conclusion, because it noted that in general the First Amendment prohibits certain forms of state action but does not command affirmative acts on the part of the government. Therefore, "correctional authorities may not properly condition the receipt of services or benefits upon the prisoner waiving such right" and it would be unlawful for Virginia to refuse to deliver mail addressed to a prisoner under his legal religious name. *Id*. However, "the mere fact that correctional authorities maintain that prisoner's records in the name he used when convicted implicates no constitutional right." *Id*.

The Sixth Circuit, in language identical to that used by the Fourth Circuit, has also ruled that

9

a prisoner has no constitutional right to dictate how prison officials keep their prison records. *Spies v. Voinovich,* 173 F.3d 398, 406 (6th Cir 1999) (prison officials did not violate plaintiff's First Amendment rights by refusing to use his religious name). The Sixth Circuit cited its own prior decision in *Imam Ali Abdullah Akbar v. Canney,* 634 F.2d 339, 340 (6th Cir. 1980), *cert denied*, 450 U.S. 1002 (1981). *Spies*, 173 F.3d at 406.

The fact that the prison's own directives may have required that a prison door card contain both the commitment name and the legally-changed religious name does not provide plaintiff with a constitutional cause of action. Prison directives are not statutes, nor are they constitutional enactments. As pointed out in *Barrett, supra,* a court may strike down an unconstitutional action by prison officials, but it may not issue orders to the prison with regard to its own administrative affairs. Plaintiff has not pointed out any services or benefits of which he was deprived as a result of the action of the defendants in removing his prison door card. The Court should therefore rule that plaintiff's claim in this regard should be dismissed.

(b)    Plaintiff's equal protection claim should likewise be dismissed because the record shows that all the prisoners in the cells controlled by housing Unit 5 staff had their prison door cards removed. There was no treatment accorded plaintiff that differed from that accorded his fellow inmates who were similarly situated.

(c)    For the reasons stated above, the Court should conclude that (i) the only claim properly exhausted by plaintiff is his contention that defendants, as part of the entire Housing Unit 5 staff, improperly removed his cell door card in late March 2003; (ii) this action did not violate any First Amendment right of plaintiff; (iii) defendants have established that there is no material dispute of fact that plaintiff's right to equal protection has not been violated and (iv) defendants' motion for

summary judgment (Doc. Ent. 38) should be granted.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 8/4/11

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on August 4, 2011.
>
> s/Eddrey Butts
> Case Manager

12